# CHARLES TOWN.

### STATE v. TAVENNER.

### Decided September 7, 1901.

1. FORFEITED LANDS—*Delinquent Sale—Deed—Title.*

    T. died intestate in 1849 seized of a tract of land in W. County. Said land was not on the assessors 'books in the name of T. or of T.'s heirs for any of the years 1866, 1867, 1868 and 1869. Without authority from and without the knowledge or consent of the heirs of T. there was placed on the assessor's books of said county for the years 1870 and 1871 a tract of five hundred acres of land in the name of T. without charging it with the taxes chargeable thereon for the previous years in which the tract was not on the books as required by section 34, chapter 31, Code 1868. Said land was returned delinquent for the non-payment of the taxes so charged thereon for the year 1871, sold by the sheriff and purchased by C., who assigned his purchase certificate to McC., and the land not being redeemed was conveyed by the clerk of the county court to McC. by deed dated October 4, 1877. *Held*: the deed conveyed no title to the purchaser.  (p. 703).

2. FORFEITED—*Non-Entry on Land Books.*

    Under section 34, chapter 31, Code 1868, said tract of land was forfeited and the title thereto vested in the State for non-entry on the assessor's books for taxation for more than five successive years from and after the year 1866 in the name of the heirs of T.  (p. 704).

3. FORMER DECISIONS APPROVED.

    Syl. 3 and 4, *Cunningham* v. *Brown*, 39 W. Va. 588, approved.

Appeal from Circuit Court, Webster County.

Bill by the State against Jeanette S. Tavenner and others. From the decree, the defendant Emma Hubbard appeals.

*Affirmed.*

W. E. HAYMOND, for appellant.

J. W. VANDERVORT, for appellees.

MCWHORTER, JUDGE:

The State of West Virginia filed her bill in equity in the circuit court of Webster County against Jeanette S. Tavenner and

others, alleging that on the 26th of April, 1842, Mintor Bailey, commissioner of delinquent and forfeited lands for Lewis County, conveyed to Cabell Tavenner lot No. 31, containing one thousand two hundred and eighty-one acres of land, situated on the Back Fork of the Little Kanawha river, since in Webster County, that said tract of land included five hundred and two and one-half acres, the land proceeded against, and giving a description of said five hundred and two and one-half acres by metes and bounds; that on the — day of —————, 18—, Cabell Tavenner died intestate leaving surviving him his widow and heirs named in the bill; that said land was not charged on the land books or entered for taxation in the county of Webster, the same lying wholly therein for more than five years prior to the year 1871, and for that reason was forfeited to the State and liable to be sold for the benefit of the school fund; that the same had never been redeemed in any manner prescribed by law; that in the year 1883 (the said land by some means having been entered on the land books) was by the sheriff of Webster County sold for the non-payment of the taxes thereon for the year 1881, and was purchased by the State and not redeemed and became forfeited and the title vested in the State; that defendant Emma Hubbard claimed title to the said land by deed from ————— dated — day of —————, 18—, that her title was superior to that of any other claimant, with perhaps an equity of redemption in some of the defendants as provided by law; that the other defendants claimed title, and praying that said land be sold for the benefit of the school fund, and for general relief.

The defendants Jeanette S. Tavenner, widow, and Jeanette A. Tavenner and B. F. Shears, heirs at law of Cabell Tavenner, filed their answer to plaintiff's bill, showing the purchase of the said one thousand two hundred and eighty-one acres by Cabell Tavenner, and the conveyance thereof to him by commissioner Mintor Bailey; that Cabell Tavenner died in the year 1849 intestate as to the lands in question, and was the owner of said tract of one thousand two hundred and eighty-one acres at the time of his death; that for many years the lands were involved in suit, and for that reason defendants failed to look after the taxes on the land as they should but said suits having been fully and finally settled, after investigating found the title had been forfeited to the State of West Virginia; that respondents were the

only heirs at law of Cabell Tavenner and entitled to the same; that the five hundred acres of land is a parcel of the one thousand two hundred and eighty-one acres and they caused the same to be surveyed by Stilman Young, surveyor of Upshur county; that for more than five years prior to the year 1870 said lands, although situated wholly within Webster County, were not changed on the land books or entered thereon for taxation and thereby became forfeited to the State, and had never been redeemed in any manner prescribed by law; that respondents were informed that for the years 1870 and 1871 a man by the name of Isaac Butcher caused said five hundred acres of land to be placed on the land books of Webster County in Holly township in the name of Cabell Tavenner with the intention of having same become delinquent and forfeited and expected at the sale of the same to become the purchaser thereof, but at the sale of delinqunet lands made in said county in 1875 the tract of five hundred acres was purchased by B. C. Conrad, who assigned said purchase to Jonathan G. McCray and on October 4, 1877, Geo. M. Sawyer, clerk of the Webster County court executed a deed therefor to said McCray; that neither B. C. Conrad nor McCray was charged on the land books of Webster County with said tract for the years 1872 to 1877 inclusive, and if the title of said parties, if they had any, was not previously forfeited, the same became forfeited to the State by reason of their failure to cause said land to be placed on the land books and charged with taxes for said several years; that in the year 1878, on the land books of Webster County, in Hackers Valley district Jonathan G. McCray was charged with said five hundred acres of land, and also with ninety-seven acres, said five hundred acres being the same five hundred acres in controversy, and the sheriff of Webster County, on the 25th day of November, 1879, pretended to sell said land as a tract of five hundred and thirty-seven and one-half acres and by deed dated September 23, 1881, Ballard P. Conrad, clerk of the county court of said county, made a deed to Benjamin C. Conrad for said tract of five hundred and thirty-seven and one-half acres, more or less; that said five hundred acres was charged for the year 1881 on said land book in name of Jonathan G. McCray and the taxes for the year not paid, and in 1883 the sheriff sold it and purchased it for the State, and it was afterwards certified by the Auditor of this State to the commissioner of school lands of Webster County as forfeited

for sale, but it had never been sold by the commissioner of school lands, hence this proceeding was instituted on behalf of the State for the sale of the same; that the sale of said lands by the sheriff of Webster County in 1879 as a tract of five hundred and thirty-seven and one-half acres when it was forfeited as tracts of five hundred and ninety-seven acres respectively was illegal, null and void, and that the deed thereunder of September 23, 1881, from B. P. Conrad, clerk, to B. C. Conrad, was illegal and passed no title; that on 24th September, 1881, said B. C. Conrad and wife pretended to convey to George Hubbard said tract of five hundred and thirty-seven and one-half acres, more or less, which includes said five hundred acres in controversy, but that no title passed by said deed; that George Hubbard by deed of 28th August, 1885, pretended to convey said five hundred and thirty-seven and one-half acres to defendant Emma Hubbard, but conveyed no title, and she has no title to said land, and the said Emma Hubbard since and including the year 1886 has been charged on the land books of Webster County for taxation with five hundred and thirty-seven and one-half acres of land including five hundred acres in controversy; averring that neither Benjamin C. Conrad, Jonathan G. McCray, George Hubbard nor Emma Hubbard have ever had possession or title to said land, that the land is valuable, worth several thousand dollars and respondents are sole owners, with right to redeem for forfeiture.   That by reason of the fact that said land was not charged on the land books of Webster County nor entered for taxation thereon for more than five years prior to the year 1870, the title of Cabell Tavenner and respondents became forfeited to the State, and if said forfeiture did not operate to transfer the title of Cabell Tavenner in said lands to the State, then that the same became forfeited to the State for the non-payment of taxes in the name of Cabell Tavenner for the year 1870, and that if said last forfeiture did not take place as stated and the facts as alleged did not constitute a forfeiture of said lands to the State, then said lands were not properly placed on the land books for 1871 in the name of Cabell Tavenner and the sale of the land by the sheriff in 1875 for the pretended delinquency and forfeiture for the year 1871 passed no title to B. C. Conrad under his purchase from the sheriff at said sale, and his assignment to Jonathan G. McCray and the deed by virtue of the as-

signment made to McCray by Sawyer, the clerk, dated October 4, 1887, passed no title to McCray, and if it passed no title to McCray, then by reason of a forfeiture of same for non-payment of taxes charged in name of McCray for the year 1878 and the non-payment of same operated as a forfeiture of the title of McCray to the State and the sale of said lands as a tract of five hundred and thirty-seven and one-half acres by the sheriff in 1879, for the delinquent taxes of 1878, and purchase thereof by B. C. Conrad, and the conveyance to him by B. P. Conrad, the clerk, by deed of September 23, 1881, operated to pass no title to Conrad, and if said proceedings were regular by which Conrad pretended to have obtained title by virtue of said deed from the clerk, then said pretended title of McCray became forfeited and delinquent for the non-payment of the taxes so charged in his name for the year 1881 in said county and the taxes for said year were not paid either by McCray, Conrad, George Hubbard or Emma Hubbard, nor by any other person for them, and the same was never redeemed from said forfeiture for the non-payment of taxes for said year, and in 1883, said land was sold by the sheriff of said county for said taxes of 1881 and purchased by the State, never redeemed, and in 1885, certified by the Auditor to the commissioner of school lands of Webster for sale; that all the acts of the several county officers of Webster County, to-wit, the sheriff and the clerks of the county court by which they pretended to pass title to McCray and Conrad under the said several proceedings were wholly null and void, and the title still remains in the State subject to respondents' right of redemption as the sole owners of the land, and offer to pay the taxes that may remain due and unpaid thereon and pray that their answer be accepted and treated as their petition, under sections 16 and 17, chapter 105, Code, and they be permitted to redeem the said lands, etc. Copies of the several deeds referred to in said answer were filed therewith.

Defendant Emma H. Hubbard filed her answer, claiming to be the true owner of the land in question; first under the sale for delinquent taxes of 1871 and 1872 as two tracts of five hundred and ninety-seven acres in name of Cabell Tavenner and purchased by B. C. Conrad, not redeemed and his purchase assigned to McCray, and conveyed to McCray by Sawyer the clerk, by the deed of October 4, 1877, then returned delinquent in the

same of McCray and sold for the taxes November 25, 1879, and purchased by B. C. Conrad and conveyed to him by B. P. Conrad, clerk, as one tract of five hundred and thirty-seven and one-half acres by deed of 23d September, 1881, and conveyed by B. C. Conrad September 24, 1881, to George Hubbard and by George Hubbard to respondent August 28, 1885, and denies the allegations of the bill that the land had been forfeited to the State for non-entry on the books and averred that same had been regularly assessed both in Lewis and Webster Counties up to date of tax sale in name of Cabell Tavenner; denied that the land was sold to the State in 1883 for the taxes of 1881 or for any other years; says the land in 1881 was McCray's land, and was not sold to the State for taxes in that name for any year; that since the purchase by McCray the taxes had been regularly paid except the delinquency and purchased by Conrad and ever since the taxes had been regularly paid, and that she has a good and complete title and that the proceedings on the part of the State ought not to be maintained and asks leave to file evidence of title. And the same defendant also filed an answer in the nature of a cross bill in answer of Jeanette Tavenner and others, and alleges that it is not true as alleged in Tavenner's answer, that the title of Tavenner in and to the land in controversy was forfeited to the State prior to the year 1870; that the five hundred acres of land was caused to be placed on the land books of Webster County in 1870 or 1871 by Isaac Butcher without authority or that it was caused to be done by him at all, but that the land was rightfully entered on the books and regularly returned delinquent for the years 1871, 1872, 1873 and 1874, and sold in 1875, as stated in answer to original bill. Denies the allegation in said answer that said land was not for any of the years from 1872 to 1877 inclusive assessed in Webster County, and denies that the sale in 1879 to B. C. Conrad was null and void, but avers that it was regular and vested in Conrad the title to the land, and that if the land was forfeited for the year 1881, she is entitled to redeem the same and asks that she be permitted to redeem; if it should be found to be so forfeited.

On the 6th day of August, 1897, the cause was referred to commissioner B. D. Hutchinson to inquire into and report upon the matters set forth in the bill and answers; the amount of taxes and interest due and unpaid, on each tract, lot or parcel or part of tract mentioned in the bill, in whom the legal title

was vested at the time of forfeiture, in whose name and for what cause forfeited; the facts in relation thereto; what portions, if any, of such real estate is claimed by any person under the provisions of section 3, Article XIII, of the Constitution of this State; the facts in relation to every such claim, and the boundaries thereof.

On the 26th day of July, 1898, the commissioner filed his report, including therewith "the evidence, documents, papers and other testimony introduced and filed before your commissioner," which were made a part of said report. The defendants, widow and heirs at law of Cabell Tavenner filed exceptions to said report of commissioner Hutchinson, and the plaintiff excepted to said report because "he should have reported the whole taxes from 1881 to the present time as chargeable against the land with interest." The cause was heard on the 10th day of November, 1899, when the court sustained the defendant's exceptions to the commissioner's report and decreed that the defendants, the heirs of Cabell Tavenner, were the only parties to the suit who had title to the five hundred acre tract of land in controversy, and they were entitled to redeem the same from the forfeiture for non-payment of the taxes thereon; that the deed from Sawyer, clerk, to McCray, dated October 4, 1877, purporting to convey the five hundred acre tract, be set aside, annulled and cancelled, and also the deed of Clerk Conrad to B. C. Conrad, dated 23 September, 1881, purporting to convey the same tract, be set aside, annulled and cancelled, and referred the cause to commissioner Hutchinson to ascertain and report the taxes properly chargeable against said tract of land in the name of Cabell Tavenner, deceased, or of the heirs. From which decree the defendant, Emma Hubbard, appealed, and assigns as errors the sustaining of the exceptions and each of them of Tavenner's heirs to the commissioner's report, also in setting aside the said deed from Sawyer, the clerk, to McCray of 4th of October, 1877, and the deed from Clerk Conrad to B. C. Conrad dated September 23, 1881, as well as declaring the said Tavenner's heirs to have title to the land and the right to redeem the same, and recommitting the cause to commissioner to ascertain and report the taxes chargeable against the land in Tavenner's name, and also for decreeing against appellant's claim of title, and in not confirming the commissioner's report.

The first exception to the report of the commissioner is "in

not finding that the title of the heirs of Cabell Tavenner to said land was forfeited to the State of West Virginia by not being charged on the land books in their names by proper authority for more than five years prior to 1871, and for more than five years subsequent to that date." Section 7, chapter 125, Acts 1869 (which is section 34, chapter 31, Code 1868) provides that: "It shall be the duty of any person owning any real estate to cause the same to be entered on the land books of the proper assessor, and charged with the State taxes thereon not charged to the owner, for the year 1832 or any year thereafter, heretofore or hereafter, not released, paid, or in any manner discharged, which were and shall remain properly chargeable thereon. When any person owning real estate has not, or shall not have for five successive years been charged on such books with such taxes on such real estate, the same, and all the title, right and interest of the owner, legal and equitable, thereto, shall without any proceeding be absolutely forfeited to and vested in this State. Provided, however, that such owner may, within one year after the passage of this act, cause such real estate to be charged with such taxes, chargeable for any such years heretofore, and thereby prevent a forfeiture for the failure so to charge the taxes for such years." It is claimed by appellant that as the record shows that the tract was charged on the land books for the year 1870 in the name of Cabell Tavenner within the year from the passage of the act that the forfeiture was thereby prevented. The record shows that although it was placed upon the books for the year 1870, it was not done or caused to be done by the owners of the Cabell Tavenner title or the heirs of Cabell Tavenner, and if it had been placed thereon by the heirs of Cabell Tavenner and assessed in their names for taxes for the year 1870, would it have been a compliance with the law? and would it have been a legal entry on the books for taxation purposes? I think not. The requirement of the proviso in the statute that the owner should within one year after the passage of the act not only have his real estate placed on the books, but have it charged thereon with the taxes with which it was properly chargeable for the years that it was not on the books and not charged with the taxes, and he is not authorized to have it entered otherwise. If the land was improperly on the books for the years 1870 and 1871, as it was, without the taxes for the years 1866 to 1869 inclusive, the years in which it was not on the books, being

charged up, then the sale by the sheriff of the land for the year
1870 was a nullity, and the purchaser took no title under the
deed dated October 4, 1877, made by George M. Sawyer, clerk,
to Jonathan G. McCray, assignee of the purchaser, B. C. Conrad,
at the sale made by the sheriff for the taxes of 1871 charged in
the name of Cabell Tavenner. The death of Cabell Tavenner
occurred in December, 1849. As shown, the land was not
charged on the books for the years 1866 to 1869, inclusive, either
in the name of Cabell Tavenner or of Cabell Tavenner's heirs,
but was entered by some one without authority to do so, in the
name of Cabell Tavenner, and without charging up the taxes for
the years 1866 to 1869 as required by statute, and in this name
was sold by the sheriff, the five hundred acres for the taxes of
1871, and the ninety-seven acres for the taxes of 1872 as re-
ported by the sheriff. The deed made by clerk Sawyer dated
October 4, 1877, to Jonathan G. McCray assignee of B. C. Con-
rad, purchaser, describes the property conveyed as "which form-
erly belonged to and was returned delinquent in the name of
*Cabell Tave*nner's *heir*s, for the non-payment of taxes due
thereon, for the year 1871, the first tract of five hundred acres
for the sum of four dollars and five cents, the second tract of
ninety-seven acres for the years 1871, 1873 and 1874, for the
sum of one dollar and thirty-one cents, that being the amount
of taxes, interest, damages and commissions due thereon at time
of sale, including fee for receipt." In *Jones* v. *Dils,* 18 W. Va.
759, it is held: "The only authority for making a deed for
lands sold for the non-payment of taxes is the sale of the land
and the conforming to the requirements of the statute there-
after. The deed must conform to the report of the sale; and if
the report of the sheriff shows that an entire tract of land was
sold, this is no authority for executing a deed for a part of such
tract; and if such a deed is executed, it is void." In *Cunning-
ham* v. *Brown,* 39 W. Va. 588, it is held: "Where the assess-
ment of a tract of land for taxation is illegal, a sale of such
tract of land made by the sheriff for non-payment of the tax so
assessed is void. For there can be no valid sale made by a sheriff
of a tract of land as delinquent for the non-payment of taxes
when there has been no legal assessment of such taxes." In case
at bar the sale is reported of real estate charged with taxes and
delinquent in the name of Cabell Tavenner, while the deed
supposed to be based on said report describes it as being

charged with taxes and delinquent in name of Cabell Tavenner's heirs." The deed is in this respect at variance with all the record, return of delinquency, sheriff's certificates of sale and surveyor's report, and it is insisted by appellee that this is a material and fatal variance. At the time of said delinquency, sale and the making of said deed, there was no provision of the statute for real estate being charged in the name of a decedent. Section 25, chapter 31, Code 1868, provides, "When real estate is charged to heirs by description or to the estate of a deceased party, such estate as was vested in the heirs or devisees of decedent, shall pass to the grantee in such deed." The same section was re-enacted in the Acts 1872-3, section 25, chapter 117. In order to provide against such contingency as we meet here the legislature of 1882 in re-enacting section 25, chapter 31, Code 1868, provided that "When real estate so sold is charged to the heirs or to the devisees of a decedent without giving their names, or to the estate of a decedent or to a *deceased person in his or her own name,* such right, title and estate as was vested in the decedent at the time of his or her death in such real estate as was vested in the decedent at the time of his or her death in such real estate shall pass to and be vested in the grantee in such deed." It will be seen that the legislature deemed it necessary in order to legalize the charging of real estate in the name of a decedent to enact a statute to that effect. At the time the land in question was placed on the assessor's books in 1870 after being off the books for at least four years Cabell Tavenner had been dead over twenty years. 1 Black. on Tax Titles, s. 273, says, "An assessment to the 'estate of Parkhurst' is a nullity," and refers to *L'Engle* v. *Wilson,* 21 Fla. 461. He further says, "The effect of listing the property of the 'heirs at law' or 'devisees' of a former deceased owner by which perhaps the present owners could be ascertained and identified might possibly be good; but listing to the estate of one who died twenty-five years before the sale does not satisfy the statute which aims throughout at personal proceedings against the owner and his personalty before recourse to the land," and refers to *Morrison* v. *McLaughlin,* 88 N. C. 251. In *L'Engle* v. *Wilson,* cited, the decision is based on a statute providing that assessment of land, must be to owner, or the occupant, or as "unknown" or to the trustee, guardian, executor or administrator in his representative capacity, and it is there held, "An assessment to the 'estate of Parkhurst'

is a nullity and a sale consequent on such assessment conveys no title to the purchaser." In the opinion in the case the Chief Justice says, "In this case there is no assessment to the owner, occupant, unknown owner or person in a representative character. The statute requires the assessment to one or the other of them; an assessment to the estate of C. Parkhurst is to neither and is equivalent to wholly ignoring the requirements of the statute. These requirements are few and simple; any man of ordinary intelligence can without difficulty follow them with accuracy. Not to do so can only be attributed to the negligence of the assessor. Section 58, Revenue Act, *supra,* makes the 'clerk's deed *prima facie* evidence of the regularity of the proceedings from the valuation of the land to the date of the deed inclusive.' This is a large invasion of the law as it once stood. We are not disposed to extend it by judicial construction. A construction which would require us to declare some parts of the act directory and others mandatory. It must be admitted that there can be no definitely prescribed rule which will unmistakably mark the line of demarkation between the two." In *Cruger* v. *Dougherty,* 43 N. Y. 107, the Court says: "It is a well established rule that one claiming to have acquired title to the property of another under statutory proceedings must show that every material provision designed for the security and protection of the owners has been substantially complied with." In *Woodbridge* v. *State,* 43 N. J. 270, the court say: "The power to sell lands for taxes is a naked power, and the validity of a title derived from such sale depends upon a strict compliance with the directions of the statute and a purchaser at such sale is bound to inquire whether he has so acted." Section 26, chapter 29, Code 1868, provides that "When the owner dies intestate, his undivided real estate may be listed to his heirs, without designating any of them by name until they shall have given notice to the assessor of the proper district, of the division of the same, the names of the several heirs and the parcels allotted to each. * * * * Where the owner has devised the lands, or a freehold estate therein, absolutely, the assessor shall charge such land to the devisee. If, under the will, the land is to be sold, it shall continue to be charged to the decedent's estate, and the assets in the hands of the personal representative shall be liable for the taxes, until a sale and conveyance thereof be made." In

*Totten* v. *Nighbert*, 41 W. Va. 800, syl. pt. 3, "The State is not bound by the unauthorized or illegal acts of its officers, nor can its title to a tract of land be transferred, divested, or affected in any manner to any extent, by such unauthorized or illegal acts; and all persons who deal with such officers do so at their peril, in all matters wherein such officers exceed their legitimate powers." As far as the record shows the land never was charged at any time in the name of Cabell Tavenner's heirs, either before or after the year 1869. I am aware that the tendency has been for many years, both on the part of the courts and the legislature of this State, to divest the proceedings whereby titles are obtained under sales for delinquent taxes as far as may be of all mere technicalities, and irregularities which do not seriously prejudice the rights of the former owner, and I think very properly so. But the courts must keep at least within the spirit of the statute. It is the duty of the owner of real estate to contribute his fair proportion of the expenses of the State government in the way of taxes assessed upon his lands, but he is likewise entitled to have the protection of the law in his rights, and the purchaser of his title for the mere pittance of a year's taxes must take what risk there is as to the proceedings being in conformity to the statute. The land being forfeited for non-entry in the name of the "heirs of Cabell Tavenner" was liable to be sold in this proceeding for the benefit of the school fund, and under the provisions of section 13, chapter 135, Acts 1872-3, "at any time before the sale" directed in such proceeding, the former owner or any creditor of the former owner of such land having a lien thereon may pay into court by and with the consent of the court all costs, taxes and interest due, at the time, etc., and redeem the land. *Rich* v. *Braxton,* 158 U. S. 375. The answer and petition of the defendants, the heirs of Cabell Tavenner, prays for permission to pay the costs, taxes, etc., as provided by the statute which permission is granted by the decree of the circuit court complained of. The report is excepted to because, having found that said real estate was claimed by no person under the provisions of section 3, Article XIII, Constitution of the State, the commissioner erred in finding that the right of redemption from the forfeiture claimed in his report was in the defendant Emma Hubbard under the several conveyances based on the sale for the taxes delinquent for the year 1871 in the name of Cabell Tavenner and the deed thereunder by Clerk

Sawyer to McCray, assignee 'of B. C. Conrad, dated October 4, 1877, and the sale for the delinquent taxes of 1878 in the name of Jonathan G. McCray made November 25, 1879, and the deed thereunder by Clerk Conrad to the purchaser B. C. Conrad dated on the 23d of September, 1881, followed by the deed from B. C. Conrad to George Hubbard, dated 24th September, 1881, and from George Hubbard to Emma Hubbard, dated August 25, 1885. The testimony of several witnesses is taken, touching the possession of Jonathan G. McCray and his vendees under the deed from George M. Sawyer, clerk, to said McCray. The said McCray himself testifies to having taken possession and hacked out a large boundary of it, sowed grass seed; worked on the land quite a good deal, and kept stock, especially cattle on the land, and that for the three years his possession was entirely uninterrupted, and that no person claimed or pretended to claim the land, so far as he knew, and there was other testimony tending to prove possession and acts of ownership on his part, and of his vendees. While other witnesses testified that they had been all over the land during the time and saw no indications of its occupancy or of any work having been done on it, but there was such improvement as he claimed on the Butcher tract adjoining the tract in question. As to the possession of and acts of ownership on the land the testimony is very conflicting and of such a character that an appellate court would not be warranted in disturbing a decree rendered thereon by the circuit court under the uniform rulings of this Court for many years, as shown by syl. pt. 2 in *Smith* v. *Johnson,* 44 W. Va. 278. The report is also excepted to in that it finds that the land in controversy was forfeited to and the title vested in the State for the non-payment of taxes charged for the year 1881 in name of Jonathan G. McCray, and sold in 1883 by the sheriff and purchased by the State and not redeemed. It is clear that if, as we have seen, Jonathan G. McCray, assignee of B. C. Conrad, the purchaser under the sale for the delinquent taxes of 1871 in the name of Cabell Tavenner, took no title under his deed of October 4, 1877, and that the land was forfeited for non-entry in the name of the heirs of Cabell Tavenner, then there was no title in McCray to forfeit which could entitle appellant to redeem. The report is further excepted to because the commissioner did not find the amount of taxes on the land up to date from the time the same was for-

feited as claimed by defendants Tavenners in their answer, and in not finding that they had a right to redeem the land on paying the taxes properly chargeable thereon. From what has been said it will appear that this exception is well taken.

I see no error in the decree complained of, and it should be affirmed.

*Affirmed.*