CHARLES STILES *et al. v.* HARRY M. LAYMAN *et al.*

(No. 9613)

Submitted January 17, 1945. Decided March 6, 1945.

508

*Marion Meredith,* for appellants.

*Ward Lanham, Fred L. Lemley, M. W. Ogden* and *L. T. Eddy,* for appellees.

ROSE, JUDGE:

This is a suit by Charles Stiles and nine others, who are the heirs at law of Bertha Stiles, against Harry M. Layman and others who are grantees, direct and remote, under him, to set aside a tax deed executed by the clerk of the county court of Marion County to said Layman, dated December 13, 1933, purporting to convey the westerly half of lot No. 14 on Hilltop Street and lot No. 93 on Homewood Avenue, situate in Union Independent District of Marion County, an addition to the city of Fairmont. From a final decree adverse to the plaintiffs this appeal was awarded on their application.

The only pleadings brought up in the record are the amended bill of complaint, the joint amended answer of the defendants, Harry M. Layman and Myrdith A. E. Layman, and the second amended and supplemental answer of the defendant, G. C. Fisher, although orders in the record indicate other defendants as having appeared and made defense.

The parcels of land in question were conveyed to Bertha Stiles, a widow, by Greater Fairmont Investment Company, a corporation, by deed dated July 21, 1924. They were entered on the land books of Marion County in the name of Bertha Stiles for the years 1925 and 1926 and the taxes thereon for these years duly paid. Bertha Stiles died January 17, 1926, intestate and leaving as her sole heirs eleven children. One of these children died un-

married, intestate, and without issue, in the year 1930. No administration of the Bertha Stiles estate appears to have been made and no certificate of her death appears of record in Marion County. The said lots continued to be carried in the name of Bertha Stiles on the land books of Marion County to and including the year 1935, although for the years 1931 to 1935, inclusive, no taxes thereon were extended or charged. After the year 1935 the lots did not appear on the land books in the name or names of the plaintiffs, or any of them, or in the name of anyone claiming under them. The lots were returned delinquent for taxes assessed thereon in the name of Bertha Stiles for the year 1930 and sold therefor by the sheriff on December 14, 1931, and purchased by the said Harry M. Layman, from which purchase there has been no redemption. In August, 1933, the purchaser caused a report and description of the lots to be made and filed with the clerk of the county court of Marion County, and caused notices to be issued directed to Bertha Stiles, to the plaintiff, Charles Stiles, to Greater Fairmont Investment Company and to A. J. Colborn, Trustee (the latter two being the beneficiary and the trustee respectively under an unreleased deed of trust executed by Bertha Stiles for unpaid purchase money), as required by Code, 11-10-16, notifying them of said sale and that a deed for the lots in question would be made to the purchaser unless redemption should be made against December 4, 1933. This notice to Bertha Stiles and Charles Stiles was executed by publication. No redemption having been made, the deed dated December 13, 1933, to the purchaser, Harry M. Layman, was accordingly executed by the clerk. By deed dated January 13, 1936, Harry M. Layman conveyed an undivided one-half interest in these lots to his wife, the defendant Myrdith A. E. Layman, and by deed dated December 12, 1938, these two conveyed lot No. 93 to John M. Dulin and Vera M. Dulin, his wife, who in turn conveyed the same to the defendant, G. C. Fisher, by deed dated September 24, 1940.

The plaintiffs, by their amended bill, which is all we

have in the record, allege that the tax deed to Layman is void: (1) Because the report required by Code, 11-10-16, of the county surveyor as a prerequisite to the execution of a tax deed was not filed within the period beginning one year after the date of sale and ending one year and six months after such sale; and (2) because the notice to the former owners of the lots was given, if legally given at all, only to Bertha Stiles, then long deceased, and to the plaintiff Charles Stiles.

Since the tax sale was made December 13, 1931, and the surveyor's report was not filed with the clerk of the county court of Marion County until August, 1933, there was a fatal defect in these preliminary steps necessary to give the clerk of the court power to make the deed. *Caplan* v. *Shaw*, 126 W. Va. 676, 30 S. E. (2d) 132. The notice to redeem also was insufficient. It was addressed to Bertha Stiles, who had been dead for seven years, and to the plaintiff, Charles Stiles, as former owners of the lots. This notice may have been valid as to the plaintiff, Charles Stiles, but it was simply no notice as to the other nine heirs of Bertha Stiles, who are plaintiffs herein. *Gates* v. *Morris*, 123 W. Va. 6, 13 S. E. (2d) 473. For these reasons we hold the tax deed to Layman void.

The defendants say, however, that the plaintiffs have no such right, title or interest in the lots in controversy as will enable them to maintain this suit for the reasons: (1) That the lots involved were in 1928 returned as delinquent for nonpayment of taxes levied thereon in the name of Bertha Stiles for the year 1927, and were sold therefor in 1929, purchased by the state and not redeemed; and (2) that the plaintiffs, for five years prior to the commencement of this suit, had failed to have the lots entered on the land books of Marion County in their names and charged with taxes thereon.

The plaintiffs say that the alleged sale to the state in 1929 was void because not made on a day authorized by the statute. However, the only reference in the record before us to this sale is the allegation in the answers in the record, as follows: "that for the year 1927 the taxes

assessed thereon were returned delinquent for nonpayment and the said real estate was sold by the Sheriff of Marion County for said delinquency in the year 1929, at which said sale the said real estate was purchased by the State of West Virginia;" there being no allegation that the land was not redeemed from this sale, and no evidence touching this sale was introduced. This is not sufficient to show transfer of title to the lots to the state. Hence this alleged sale must be disregarded.

The Constitution of this state, Article XIII, Section 6, provides that:

> "It shall be the duty of every owner of land, or of an undivided interest therein, to have such land, or such undivided interest therein, entered on the land books of the county in which it, or a part of it, is situated, and to cause himself to be charged with taxes legally levied thereon and pay the same. When, for any five successive years, the owner of any tract of land, or undivided interest therein, shall not have been charged on such land books with state, county and district taxes thereon, then, by operation hereof, the land, or undivided interest therein, shall be forfeited, and title vested in the state. * * *".

From 1925 to 1930 these lots were carried on the land books of Marion County and taxes charged thereon in the name of Bertha Stiles. Although the owners were her heirs from 1927 to 1930, the entry on the land books in her name protected them against forfeiture. *Ramsburg* v. *Jones,* 104 W. Va. 498, 140 S. E. 485; *Blake* v. *O'Neal,* 63 W. Va. 483, 61 S. E. 410. For the years 1931 to 1935, inclusive, the lots were carried on the land books in the name of Bertha Stiles, with no taxes extended or charged thereon, presumably in compliance with the provisions of Code, 11-4-13, requiring land purchased by the state for delinquent taxes to be so entered without taxes charged. Such an entry on the land books does not meet the requirements of the constitutional provision above quoted. To prevent forfeiture there must be a charge of taxes thereon. *State* v. *Tavenner,* 49 W. Va. 696, 39 S. E. 649. For five

successive years these lots were entered on the land books without taxes being charged, and for the four succeeding years no entry at all was made in the names of the plaintiffs or of any one under whom they claim. This worked a forfeiture to the state of title thereto. To effect such forfeiture no deed or other proceeding is required. *Wiant v. Hayes,* 38 W. Va. 681, 18 S. E. 807.

From a forfeiture to the state, under this constitutional provision, there is no period for redemption. When the five years of nonentry has matured, the state becomes the absolute owner of the land. But our statutes have long provided that land so forfeited shall be sold in a chancery suit in its name brought by the commissioner of school lands, in which the former owner and all persons claiming title to or interest in the land shall be made parties defendant, with the right to redeem the land in such suit. Section 10, Article 3, Chapter 37, Code of 1931. The character of this statutory right to redeem has been frequently considered by this Court. Certain cases announce broadly the general proposition that, while the title to the land remains in the state, the former owner cannot maintain any litigation in relation thereto. *Houck-Reidler Brothers Coal Mining Company* v. *Upper Elk and Potomac Coal Corporation,* 115 W. Va. 246, 174 S. E. 894; *Haner* v. *Mac-Corkle,* 109 W. Va. 762, 158 S. E. 500; *Morgan* v. *Pool,* 76 W. Va. 534, 85 S. E. 724; *State* v. *Matthews,* 68 W. Va. 89, 69 S. E. 644. But a large number of cases, concurrent with these, do in fact permit a former owner to be heard in chancery, at least for the purpose of protecting his inchoate right to redeem in a school commissioner's suit, if and when such suit shall have been instituted. *Caplan* v. *Shaw, supra; Bank of Quinwood* v. *E. W. Becker, Commissioner, etc.,* 119 W. Va. 534, 194 S. E. 849; *Armstrong Products Corporation* v. *Martin,* 119 W. Va. 50, 192 S. E. 125; *Early* v. *Berry,* 115 W. Va. 105, 175 S. E. 331. *White* v. *Walter Wickham & Son, Inc.,* 112 W. Va. 576, 165 S. E. 805; *Elk Garden Big Vein Coal Mining Company* v. *Gerstell,* 95 W. Va. 471, 121 S. E. 569; *State* v. *Young,* 94 W. Va. 7, 117 S. E. 688; *Ellis* v. *Hager,* 87 W. Va. 313, 104 S. E. 607; *State* v. *Haymond,* 84 W. Va. 292, 100 S. E. 81; *Despard* v.

*Pearcy,* 65 W. Va. 140, 63 S. E. 871. In *Caplan* v. *Shaw, supra,* we specifically held that the heirs of a former owner of land, which had been forfeited to the state for nonentry for taxation, could maintain a suit to cancel a void tax deed. We perceive no reason to depart from the principle announced in that case.

The defendants further say that the plaintiffs' cause of action accrued more than five years before the commencement of this suit, invoking Code, 11-10-24, which provides, in substance, that the former owner of land sold for taxes may, within five years after the date of the tax deed, and not thereafter, institute a suit, or another specified proceeding, for setting aside such sale and deed on the ground that the taxes for which the land was sold were "not in arrear". But this limitation is specifically made applicable only to void a tax deed on the single ground mentioned. It is in no sense a general statute of limitations. *Ellis* v. *Hager, supra; McGraw* v. *Rohrbough,* 74 W. Va. 285, 82 S. E. 217.

Finally, the defendants say that even though the tax deed to Layman be considered as absolutely void, it was at least color of title, and that Layman and those claiming under him have had actual continuous possession of the two parcels of land purported to be conveyed by the tax deed for five years and have paid all taxes charged or chargeable thereon for the same period, while the plaintiffs have paid no taxes thereon at any time, and that thereby the defendants have acquired perfect title under the provisions of section 3 of Article XIII of the Constitution of West Virginia.

The constitutional provision so invoked reads as follows:

"All title to lands in this State heretofore forfeited, or treated as forfeited, waste and unappropriated, or escheated to the State of Virginia, or this State, or purchased by either of said States at sales made for the non-payment of taxes and become irredeemable, or hereafter forfeited, or treated as forfeited, or escheated to this State, or purchased by it and become irredeemable, not re-

deemed, released or otherwise disposed of, vested and remaining in this State, shall be, and is hereby transferred to, and vested in any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), * * * for so much of said land as such person shall have had claim to and actual continuous possession of, under color of title for any five successive years after the year 1865, and have paid all State taxes charged or chargeable thereon for said period."

It is undisputed in the record that the defendant Layman (who then owned the easterly half of lot No. 14), immediately after, acquiring his deed of December 13, 1933, entered upon the westerly half of lot No. 14, cleared the weeds, briars and bushes therefrom, graded the same to some extent, sowed it in lawn grass, planted on it fruit trees and shrubbery, built across it to his garage a driveway constructed of slag and "red dog", and continuously, to the time of the bringing of this suit in August, 1940, so used this half of the lot in this manner. This, we think, amounted to the "actual continuous possession" required by the Constitution.

The purchased part of the lot was not charged on the land books to Layman until the year 1936, after which it appears thereon continuously to and including the year 1938, either in his name or that of his wife, after she acquired a half interest therein, or in the names of both. Lot No. 14 was entered as one entire lot and was so charged to said Laymans on the land books for the year 1939. The Laymans paid all taxes thereon for the years 1936, 1937, 1938 and 1939. The lot as a whole was entered on the land books, charged to the Laymans, for the year 1940, but no taxes had been or could have been paid on it for that year at the time this suit was instituted, and taxes subsequently paid pending the suit cannot aid them toward the acquisition of title for the purpose of this suit.

But when the land was entered on the land books for the year 1936 it was backtaxed for the year 1935, and the taxes for that year were regularly paid by Layman in due

course. We think this clearly amounted to the payment of taxes for that year. The Constitution speaks not only of the payment of taxes "charged" but also of those "chargeable" for the period of five years. The Laymans have unquestionably paid all taxes charged on this lot for the years 1936 to 1939 inclusive, and also all taxes which were "chargeable" for the year 1935. They thus have had actual continuous possession of the westerly half of lot No. 14 for the five years from 1935 to 1939 inclusive and have, in fact, paid all taxes "charged or chargeable thereon" for the same period. This perfects their title to the parcel of land described as part of lot No. 14 under the Constitution and the plaintiffs' bill must fail as to this part of the land in controversy.

The evidence of possession under the tax deed of lot No. 93 is likewise sufficient. The defendant Layman testifies that immediately after receiving his deed he placed one Stevens, the owner of an adjoining lot, in possession of said lot No. 93, in consideration of his clearing and caring for the same, and that Stevens thereupon occupied the lot for a garden and cow pasture up to and including the year 1937, during which he kept the lot inclosed with a barbed wire fence. Stevens concurs in this statement to the extent of saying that he took possession of the lot shortly after Layman acquired it and proceeded to clear it of brush, briars and other filth from a part thereof, and that some parts of it were never actually cleared. He further testifies that the lot was inclosed by barbed wire from the time he turned his cow therein, which appears to have been immediately after the first crop was removed in 1934, until his occupancy terminated in the fall of 1937. The defendant Layman testifies that his father gardened the lot for the season of 1938. The lot was conveyed to the defendants, Dulins, under date of December 12, 1938. They gardened the lot during the season of 1939, and in the fall thereof began the construction of a dwelling house thereon which, when completed, was occupied by them until the lot was conveyed to the defendant Fisher after the commencement of this suit. We think that the posses-

sion thus shown was "actual continuous" possession under color and claim of title from the spring of 1934 to the time of the institution of this suit in August, 1940, within the meaning of the Constitution. Actual possession of land does not require that every foot shall be physically occupied by the possessor. The Constitution, by its very language, gives the possessor the benefit of color of title. When Layman took and maintained possession through Stevens and his father his possession extended to the precise limits of the boundaries of the lots as shown by his deed and the plat defining the lots. Stevens testifies that the corners of the lot were marked by iron and wooden stakes, and the continuity of the possession under Layman was not broken. True, there were possibly short intervals between seasons and successive occupants when the lot was not in physical occupation by such users, but such periods occur in all occupation of land and are not held to make the possession discontinuous. The case of *State v. Morgan*, 75 W. Va. 92, 83 S. E. 288, seems to determine fully and completely this phase of the controversy at bar. In that case land was forfeited to the state and the possession of another, under color and claim of title as required by section 3, Article XIII of the Constitution, followed. Point 3 of the syllabus reads:

> "The possession of an owner who under color of title enters upon lands which include within their exterior boundaries part of a tract title to which vested in the state by forfeiture, and for ten years actually occupies portions of the inclusive tract but no part of the forfeited land, being actual as to such portions, will be held and treated, under Sec. 3; Art. 13, Const., as actual possession of so much of the forfeited tract as is included within the bounds of the larger area not in actual or virtual possession of the state, the former owner or others claiming under them."

See also: *McCoach & Co. v. Hager & Company*, 122 W. Va. 681, 12 S. E. (2d) 529; *State v. United States Coal and Oil Co.*, 86 W. Va. 256, 103 S. E. 50; *Neal v. Wilson*, 79 W. Va. 482, 92 S. E. 136; *State v. Moore*, 71 W. Va. 285, 76 S. E.

461; *Holley River Coal Co.* v. *Howell,* 36 W. Va. 489, 15 S. E. 214.

Under the principles announced in these cases we consider that the evidence in the case at bar clearly shows that the defendant, Layman, and those holding under him have had actual continuous possession for five successive years of lot No. 93 within the meaning of section 3 of Article XIII of the Constitution.

Lot No. 93 was entered on the land books of Marion County in precisely the same manner as that part of lot No. 14, except for the years 1937 and 1938. For these years the entries were in these words and figures: "Pt. 14 Hilltop & Lot 92 Homewood". The valuation of the two lots is precisely the same as for the preceding two years, namely, $100.00. The assessor of the county testified that the substitution of the figures 92 for 93 was a clerical error. The evidence shows that lot No. 92 on Homewood Avenue was owned by and assessed to one Shaffer continuously from 1925 to 1940, and valued for the years 1937 and 1938 at $150.00. The assessment as lot No. 92 thus seems clearly to have been a mere clerical error. It will be presumed that the taxes "chargeable" on lot No. 93 for the years 1937 and 1938 were the same as for the preceding years; and these taxes were actually paid. Thus we have actual continuous possession of this lot from 1935 to 1939, inclusive, and the payment of all taxes "charged" or "chargeable" thereon for the same period, by which its title is vested in those claiming under the tax deed of December 13, 1933. Accordingly, the decree appealed from must be affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting from syllabus point two:

I do not believe that an entry upon the land books omitting the extension of levies is an element to be considered in determining the question of whether the land described in the entries has been forfeited for nonentry. To the exact contrary, the provisions of Code, 11-4-13, which are, with the exception of Code, 11-3-9, relating to exempt

property, the only authorization of an entry without an extension of the levies, are to the effect that *real estate purchased by the State* at a tax sale shall be entered, classified and valued as though no sale had occurred without charging the land with taxes until redeemed. If that kind of entry must be based upon a previous sale to the State, instead of the entries without levies extended tending to prove a forfeiture for nonentry in the name of the former owner, they would be positive proof that the State owned the title it had bought, and, therefore, that the former owner of that title could not comply with the duties imposed by Section 6 of Article 13 of our Constitution, which are "to cause himself to be charged with taxes legally levied thereon and pay the same." That provision applies only to landowners. But the person in whose name the land was charged for the year for which the delinquency occurred pursuant to which the State purchased, is not, after the State's purchase, the owner of the land, but of an equity of redemption only. After a year he has no interest in the land itself; he has only a State-granted privilege to redeem. The State is the owner. So that an entry without levies for five consecutive years under the statutory provision just referred to, if it proves anything, shows that the State of West Virginia has bought and owns the land described. It could not be entered and taxed in the name of the person charged with the delinquency pursuant to which the State bought the land. In other words, if the State has bought, taxes cannot be entered on the land books in the name of the former owner. The land is not to be charged with taxes while owned by the State. Neither is the State's title subject to forfeiture.

In addition to the foregoing the amended answer of Layman and others affirmatively alleges that for the years 1931 to 1935 inclusive they caused the Auditor to extend the levies for each separate year, alleging the amount thereof and the fact that they paid the taxes, interest and penalties for those years to the Auditor. It would seem that this would have the effect of curing a forfeiture for nonentry for those years, although even under our present

statute there does not seem to be authority vested in the Auditor to permit a redemption from actual forfeiture for five consecutive years of nonentry, although under the present act he likely has authority to receive the taxes for less than five years and thereby permit payment prior to forfeiture. What the authority of the Auditor was under the particular statute effective at the time that Layman paid the five-years taxes I do not know, the exact date of payment not being stated.

But it is said that the sale to the State for the taxes of the year 1929 was void for the reason that it was held upon a day not authorized by statute, and that consequently the State did not become the owner any more than an individual would become the owner under like circumstances in the event he received a tax deed. If this be true, it remained the duty of the then owner or the person in whose name the delinquency occurred to see that the land was properly charged and pay the taxes. *Webb* v. *Ritter,* 60 W. Va. 193 (Pt. 3 Syl.), 54 S. E. 484. If the void sale to the State followed by the land being listed in the owner's name without the extension of levies gives that owner an unwarranted sense of security in the matter, that fact is to be regretted, but it does not alter the result as a matter of law. His title was still forfeited because not charged with state, county and district taxes for five consecutive years.

But Layman is not claiming the title forfeited to the State for nonentry for the years 1931 to 1935 inclusive. He alleges that he paid the Auditor and redeemed for those five consecutive years.

Where noncontiguous boundaries are entered upon the land books as a single charge and the taxes paid, as here, the irregularity of the assessment does not work a nonentry of any part of the land that is otherwise properly assessed. *The White Flame Coal Co.* v. *Burgess,* 86 W. Va. 16 (Pt. 9 Syl.), 102 S. E. 690.

What title then did the State of West Virginia hold that Layman could gain by his five-years continuous open and

notorious possession, together with payment of taxes following the State's acquisition?

For the foregoing reasons I disagree with syllabus point two and with so much of the discussion contained in the majority opinion as is affected thereby.

Judge Lovins joins in this memorandum.