# CHARLESTON

## COLLINS *v*. REGER *et al.*

Submitted September 7, 1906.    Decided May 22, 1907.

`1. TAXATION—*Tax Sales—Curative Acts.*

The curative provision of section 25, chapter 31, Code, relating to errors and irregularities in tax proceedings, apply as well where the state as where an individual is the purchaser at a sale for delinquent taxes. *State* v. *McEldowney*, 54 W. Va. 695, approved. (p. 198.)

2. SAME—*Assessment—Error in Name.*

Assessment and sale for taxes in the name of Martha Hedrick of land belonging to Martha Helmick, or in some name calculated to mislead or deceive such true owner, are void if without her knowledge or consent; the rule of *idem sonans* being inapplicable to assessment rolls or to delinquent and sales returns.   (p. 198.)

3. SAME.

In this state taxes are a charge against the owner as well as the property assessed; and the policy of our law and judicial decisions, in reference to delinquency and sale therefor, is to protect the owner against all such errors and irregularities on the face of the tax proceedings as materially prejudice and mislead him in reference to the real estate returned delinquent and sold for taxes. (p. 198.)

4. SAME—*Proceedings by Commissioner of School Lands—Title Acquired.*

Proceedings by the commissioner of school lands under chapter 105 of the Code are incompetent to reach back and perfect a void

title acquired by the state under former tax proceedings, so as to divest the title of the true owner not a party to the suit; and the proceedings and deed of the commissioner of school lands pass to a purchaser only such title as the state originally acquired and still held at the time of the latter sale; the statute giving a remedy not being intended to create any new right or title in the state. (p. 201.)

5. SAME—*Quieting Title—Void Tax Deed.*

Equity has jurisdiction at the suit of the owner to set aside, as a cloud upon his title, a void tax deed. (p. 202.)

6. SAME—*Tax Deed—Setting Aside.*

Where land has been illegally assessed and sold for taxes, a void deed to the purchaser will be set aside only on condition of repayment of the purchase money with interest and costs. (p. 205.)

Appeal from Circuit Court, Randolph County.

Bill by Rachel Collins against Shelton L. Reger and others. From the decree, plaintiff and Martha Helmick appeal.

*Reversed.    Remanded.*

CUNNINGHAM & STALLINGS, for appellants.

W. B. MAXWELL, for appellees.

MILLER, JUDGE:

August 17, 1893, by deed recorded March 26, 1895, Arch Bonner, Sr., conveyed to Martha Helmick 50 acres of land in Dry Fork District of Randolph county, which she afterwards conveyed to John C. Clayton, who conveyed the same to the plaintiff Collins. The dates of the deeds to Clayton and Collins are left blank in the bill, and the certified copies purported to be made exhibits therewith are not found in the record. In 1895 50 acres similarly located and described was assessed in the name of Martha Hedrick, was returned delinquent for the taxes of that year in her name, and was in 1897 sold by the sheriff and purchased by the state. There being no redemption, the commissioner of school lands subsequently proceeded against this and other tracts; and at a sale thereof by him December 10, 1900, Shelton L. Reger became the purchaser, to whom a deed was made therefor by the commissioner three days later. By deed of November 25, 1901, Reger conveyed a two-thirds

interest in the property to H. R. Warfield and Davis Elkins.

In one paragraph the bill alleges that this land was assessed in the name of Martha Helmick for 1896; in another, that the plaintiff herself was so assessed. In her answer Martha Helmick alleges that she regularly paid the taxes on this land from the time it was placed on the land books in 1896 until she conveyed it to Clayton. In the answer of the defendants Reger and others they say the land was charged in 1895 to 'Martha Hedrick but was changed in 1896 to Martha Helmick, in whose name they say it still remains and all taxes paid thereon, except for the year 1895, for which year the land was charged to no one except Martha Hedrick. As the only year involved here is 1895, it is immaterial how the land was assessed or in whose name delinquent for any other year. It is suggested that this tract, having remained assessed to Bonner for 1894 and not being assessed to Martha Helmick or her successors until 1896, must be treated as having remained on the land books in the name of Bonner and the taxes paid by him for 1895.

At January rules, 1905, Rachel Collins filed her bill against Reger, Warfield, Elkins, Clayton and Helmick, to set aside the tax deeds. She alleges payment of taxes since 1896, and possession since 1893 by herself and grantors; sets forth the above delinquency and tax purchases and Reger's conveyance, and that there are two Arch Bonners dealing in real estate and a Martha Hedrick in said district; charges irregularity in the commissioner's proceeding; denies validity of the title of the state and Reger; offers tender, if the relief asked for be granted, of taxes, costs and interest, subject to the order of the court; and prays cancellation of the various conveyances in and subsequent to the tax proceedings, as a cloud upon her title. By amended bill filed September rules, 1905, the plaintiff charges non-assessment of her land for 1895, wherefore no delinquency could accrue. In the answers filed, Helmick adopted all material allegations of the bill; and Reger, Warfield and Elkins alleged regularity in the tax proceedings. No evidence being taken, the bill was upon final hearing on the pleadings and previous decrees dismissed, and the plaintiff and Martha Helmick appeal.

Relying on the case of *McGhee* v. *Sampselle*, 47 W. Va. 352, the appellants assert that, conceding the errors and irregularities in the delinquent return and in the return of the sale of the land by the sheriff rendered the sale and purchase by the state voidable if not absolutely void, the curative provisions of section 25, chapter 31 of the Code, do not apply. As that case was overruled in *State* v. *McEldowney*, 54 W. Va. 695, wherein it is held that the curative provisions of said section do apply to purchases by the state and proper construction is given to section 32 of the same chapter, no further consideration need be given that point.

It is claimed by the plaintiff that the assessment for the year 1895 in the name of Martha Hedrick was not a legal and valid assessment of her land; that the sale by the sheriff and purchase by the state in the name of Martha Hedrick, and the subsequent sale and deed of the school commissioner, conferred no title upon the purchaser. The question for our consideration therefore is: Was the assessment for 1895 in the name of Martha Hedrick a valid and legal assessment of plaintiff's land? Whatever may be said of the laws of other states, the policy of our assessment laws and of the decisions of this state and Virginia has been to make taxes a charge against the owner as well as the property assessed. The duty is imposed upon assessors to ascertain the name of the owner, and upon the clerk of the county court and other officers to furnish the assessor the necessary information in regard to change of ownership, so that proper assessment in the name of the true owner may be secured. Chapter 30 of the Code gives right of distraint for the taxes assessed against the goods and chattels of the owner, and gives to a tenant from whom payment of taxes due from the owner is obtained by distraint or otherwise credit therefor out of rents due. In the provision for the return of lands delinquent for taxes the name of the owner is emphasized; and the list is required to be verified, published and posted, so that the owner may be given the correct information as to whether his lands are delinquent. By section 24 of that chapter a penalty is imposed upon a collecting officer who shall return in the list of uncollected taxes real estate, persons or property as delinquent when he had found or might

have found by reasonable diligence sufficient property within his county liable to distress for the taxes for which such real estate, persons or property are returned delinquent. By chapter 31, relating to the sale of real estate returned delinquent for taxes, various provisions are made for the protection of the owner; and in former years, as the decisions of this state and Virginia will attest, strict compliance with the statute was required before the owner would be deprived or divested of his title.   While it is true that the policy of the law in regard to irregularities in the proceedings has been very much modified, and the curative provisions of section 25 of chapter 31 of the Code have been repeatedly extended so as to cure defects in tax titles, particularly after deeds made, yet the present provisions of that section has still kept in view the rights of the former owner, and furnishes him protection; and he is not thereby concluded by any irregularity appearing on the face of the proceedings, if such as to materially prejudice and mislead the *owner* of the real estate so sold as to what portion of his real estate was sold and when and for what years sold and the name of the purchaser thereof.

The name of the former owner is one of the most important requirements of all these tax proceedings.   Nothing could be more calculated to mislead and prejudice the owner than to omit his name from the assessment roll or the delinquent or sales return.   This fact has long been regarded in Virginia and this state; and if lands were assessed in the wrong name, or in some name calculated to mislead or deceive the true owner, such assessment and sale has been held void and of no effect as against the title of the true owner.  *Nalle* v. *Fenwick*, 4 Rand. 593; *Yance* v. *Hopkins*, 1 Munf. 419, Va. Rep. Anno., and cases cited; *Cunningham* v. *Brown*, 39 W. Va. 588; *State* v. *Tavenner*, 49 W. Va. 697; *Stevenson* v. *Henkle*, (Va.) 42 S. E. 672, 673; *Mosser* v. *Moore*, 56 W. Va. 478.

In *Cunningham* v. *Brown*, land previously conveyed was in 1882 reassessed to the original owner as an original tract of 74 acres, and omitted from the land books in 1883 in the name of the purchaser from the original owner. Elizabeth Cunningham, the owner of the 34 acres by purchase, never authorized the tract dropped in her name from

the land books. The land thus assessed to the original owner was not in fact his land, for he had previously disposed of all his land prior to 1883. At the time of the sale and purchase for taxes one Brown was the owner of all the land sold for taxes, except the 20 or 34 acres so assessed. It was held that such assessment and sale were illegal and void, and did not confer the title of the true owner upon the purchaser. In *State* v. *Tavenner*, land omitted from the land books for more than five years prior thereto was in 1870 and 1871 after the death of the owner replaced on the books in the name of the decedent without the knowledge or consent of his heirs, and was subsequently sold by the sheriff and purchased by an individual for the taxes delinquent for 1871. At the time of the delinquency, sale and deed to the purchaser, there was no provision for real estate being charged in the name of a decedent; and it was held that the assessment in the name of the decedent was illegal and void, and that the heirs were not concluded from redeeming the land from forfeiture thereof for the omission from the land books.

As affirmed in *Stevenson* v. *Henkle, supra*, the authorities generally hold that a mere mistake in the name not calculated to mislead will be regarded as immaterial, and that one will not be permitted to escape the burdens of taxation by errors, omissions or irregularities which do not prejudice his rights. But the converse is equally true; and when, in the language and spirit of our law, such mistake will result to prejudice and mislead the owner, the proceeding is void. In *Kendall* v. *Scott*, 48 W. Va. 251, 253, it is held that the failure of the clerk to transfer land from the grantor to his grantee, and a subsequent sale and purchase by an individual for the taxes delinquent for the year subsequent to that of the date of the conveyance, would not be sufficient to render void the tax deed, as it was the duty of the owner to see that his land was assessed to him and to pay the taxes thereon. But this case does not cover the one at bar, where land was assessed in the name of some other person than the former or true owner. While it is the duty of the owner, as this case holds, to see that his lands are transferred and to pay the taxes, yet if the clerk or the assessor places his land on the book in the name of some other person the other authori-

ties cited would hold the assessment and sale in the name
of the other person void and ineffectual to confer title. In
1 Cooley on Taxation, 3rd Ed., the writer says care should be
taken that the name given in the list be the correct one, for
any misleading error will be fatal unless, as is frequently
the case, there is a statutory provision that mistake in des-
ignating the owner shall not invalidate the assessment. In
Black on Tax Titles, section 106, the author says: "The
determination of the ownership of real property, for pur-
poses of taxation, is sometimes a question of serious diffi-
culty. The authorities, however, appear to hold that by
the 'owner' is meant the person who has the legal title or
estate to or in the land, and not one who by contract or oth-
erwise has a mere equity therein, or a right to compel
a conveyance of such a legal title or estate to himself."
In section 107 the same author says: "Where the statute
requires the assessor to ascertain the taxable property in
his district, both by examination of the records of convey-
ance and by inquiries, etc., it is held that an assessment in
the name of former owners, whose title has been divested by a
bankruptcy sale and who are not in possession, and an adjudi-
cation of the lands to the state for non-payment of the taxes
are void." In *Bird* v. *Benlisa*, 142 U. S. 664, 665, it is held
that an assessment to a firm as to whom there was no pretense
that they or either of them ever had any title to, possession of
or connection with the land was an absolute nullity and that
a subsequent sale thereof for taxes passed no title. In
*Rich* v. *Braxton*, 158 U. S. 375, it is held that, where lands
were without authority of law placed on the tax books in
the name of the private persons claiming under others having
no title thereto, no title could be conferred by a tax sale
thereof.

If, as we conclude from these authorities, the error of
the clerk in placing for 1895 upon the land books 50 acres
in the name of Martha Hedrick was such as to materially
prejudice and mislead Martha Helmick, the true owner, and
by the delinquent return, sale and purchase of the taxes
of that year the state acquired no title, did the subsequent
proceeding and sale by the school commissioner operate to
invest in the purchaser at the latter sale good title as against
the true owner? It is claimed that the proceeding of the

school commissioner under chapter 105 of the Code were in some way competent to reach back and perfect the void title of the state under the former tax proceeding; and that, whether or not the state had before acquired title, it thereby acquired jurisdiction over the person and property of the true owner to sell his land and confer good title. This seems to us an anomalous proposition. How can it be that a void delinquent return and sale in the name of some person other than the true owner can give title to the state, or a subsequent proceeding by the school commissioner (the object of which is to realize the state's taxes and divest it of such title as it has) deprive the true owner of his rights of property? It is true that section 6 of chapter 105 provides that the person in whose name the land was forfeited shall if known be made defendant as well as all persons claiming title to or an interest therein as far as known, and any person claiming an interest not so made a party may be made defendant upon petition; that section 8 provides that the commissioner to whom the cause is referred shall give notice to all parties thereto and all unknown owners and claimants, by personal service or publication, which when so published and posted shall be equivalent to personal service on all parties to the record and all unknown owners and claimants; and that section 18 gives jurisdiction to the court to hear and determine all questions of title, possession and boundary as well as all conflicting claims arising therein, and to that end may direct an issue to be made up and tried at its bar as to any question proper to be tried by a jury. Provision is made by section 17 for the former owner, his heirs, devisees or assigns to redeem the land from forfeiture to the state; and, as provided by section 20, the final decree entered is a bar to the claim of every person to any part of the real estate or any lien thereon, or to the proceeds thereof, who has failed to appear and present his claim as provided in section 6 of said chapter, except as to the excess of the proceeds of the sale. By section 15 the effect of the deed of the school commissioner is to convey all the right, title and interest of the state which passed to and vested in it, under the constitution and laws thereof, by reason of forfeiture of such real estate or otherwise, and remained in the state at the time of the decree of sale, regardless of whether the same was sold as

forfeited, escheated or waste and unappropriated land.
The deed of the commissioner of school lands in this case,
as by decree directed, conveys to Reger all the right, title
and interest in the state in the tract of 50 acres.

In the case of *Mosser* v. *Moore, supra*, a list of land de-
linquent for taxes and a list of lands sold for taxes which gave
no specification or description of the land, though the name of
the owner appeared, were held void so as to render a tax
sale and deed thereunder void, and to be such a defect as
was not cured by section 25 of chapter 31 of the Code.
"Such list," says the court, "is just as though there were
no delinquent list at all—a nullity, a vacancy." And the
court felt bound to say that such want of the record would
mislead the owner, because it would give him no notice of
the delinquency and sale; that there was no warning in
the place where the warning ought te be found. It
seems to us that a delinquent list not containing the
name of the true owner may be said to more surely mis-
lead and deceive him than one merely omitting a description
of his land.

A proper construction of the provisions of chapter 105
of the Code would seem to limit the proceedings of the
school commissioner to the particular title of the persons
proceeded against or those claiming in privity with them,
interested in the very title the state acquired in the pur-
chase at the delinquent sale, and not designed to cut off the
true owner not charged with taxes whose land had not been
returned delinquent or sold. This law gives a former owner,
his heirs or assigns, or any creditor having a charge against
the same for debt, the right in those proceedings to redeem
the land. Can it be said that in the school commis-
sioner's proceedings here involved Martha Helmick could
have redeemed this land, even if we concede that her land
was by mistake assessed in the wrong name to Martha Hed-
rick? According to the authorities cited, such assessment
as respects the land of the owner was as if there had been
no assessment, delinquent return or sale; and by the same
parity of reasoning no creditor of Martha Helmick would
have been permitted to redeem land assessed and pro-
ceeded against in the name of Martha Hedrick, another
and different person, *Yokum* v. *Snyder*, 42 W. Va. 357, is

relied upon by the appellees.    This case is not an adjudi-
cation of the point we are discussing.    That case simply
holds that land not proceeded against before the 25th day
of February, 1893, must be proceeded against under chapter
105 as amended and re-enacted by chapter 24 of the acts of
1893.    The court does there say that the notice required by
section 8 had not been published and posted by the commis-
sioner—a very important matter, as the proceeding is in-
tended to bind everybody, the unknown owners and claim-
ants as well as those known.    But what known or un-
known owners?    Certainly not the known or unknown
owners of a title not forfeited, sold or acquired by the state;
for to give the statute such construction would be to create
in the state a new right not acquired by the proceedings
in which it became purchaser.    In other words, the statute
giving a remedy would be thereby construed to give a new
right which the legislature could not and we think did not
attempt to confer.

But it is said that Martha Helmick, though not named
as defendant, was served with the process commencing the
suit of the school commissioner.    But she was not a party
to that suit, or proceeded against as an unknown owner of the
title acquired by the state.    Nothing, as we must assume, was
alleged in the bill against her, and no valid decree against
her could be pronounced without allegation and proof.    There
must be identity of parties with respect to interest repre-
sented, in order to make a judgment or decree entered in a
former proceeding available as a defense in a subsequent suit
on the same cause of action.    1 Hogg. Eq. Prin., section
378.

Even if the rule of *idem sonans* were applicable to the
names of Martha Hedrick and Martha Helmick in the pro-
ceedings of the school commissioner, it was not so applicable
to the assessment roll or to the delinquent and sale returns,
which were intended for the eye and not for the ear.    Black
on Tax Titles, sections 109, 170.    The rule of *caveat emptor*
applies to a purchase at a sale for taxes or in tax proceedings.
2 Cooley on Taxation, 920, 1017, 1063.

It is suggested that equity has no jurisdiction if as claimed
by the appellants, the delinquent return, the sale and pur-
chase by the state and the deed to the purchaser in the school

commissioner's proceedings are void. This question has been put to rest in this state by former decisions of this Court. *Simpson* v. *Edmiston*, 23 W. Va. 675, and other cases cited in *Rich* v. *Braxton*, 158 U. S. 373. In the latter case it is held that, although the courts of the United States sitting in equity can not be controlled by the laws of the states or the decisions of the state courts, nevertheless the courts of the United States sitting in equity may enforce new rights of an equitable nature created by such laws.

One question remains. The bill of the plaintiff proposes that, if the court should determine the plaintiff's land was the tract returned delinquent for the non-payment of taxes for 1895 in the name of Martha Hedrick, she thereby tenders payment to the defendant of all taxes, costs and interest as soon as the amount thereof can be determined. This Court in *Mosser* v. *Moore, supra*, distinquishes *State* v. *McEldowney* from that case, because in the latter the land had been assessed contrary to one prohibition and sold contrary to another prohibition of law, whereas in the former case it was not so. The principles in the case of *Mosser* v. *Moore* seem more applicable to the case here; and we follow it in holding that the setting aside of the sale and deed to the purchaser by the commissioner of school lands should be conditioned upon repayment to the defendant Reger of the purchase money, with interest and costs, when ascertained, as provided in section 25, chapter 31 of the Code.

We are therefore of opinion to reverse the decree and remand the cause to the circuit court to be therein further proceeded with according to the principles enunciated and directions given herein and further according to the rules of equity.

*Reversed.    Remanded.*