CLARA L. GATES *et al.* v. GEORGE MORRIS *et al.*

(No. 9130)

Submitted January 8, 1941. Decided January 28, 1941.

*Alexander P. Gates,* for appellants.
*Max DeBerry* and *Harry E. Moats,* for appellee.

ROSE, JUDGE:

By deed dated October 26, 1917, George Morris, of Ritchie County, conveyed to C. A. Gates, of Kanawha

County, and one John Davidson an undivided three-fourths of the oil and gas in 309 acres of land in Ritchie County.

Gates died February 10, 1923, leaving Clara L. Gates as his widow, and C. Bernard Gates and Mabel Gates Crickard as his two children and sole heirs-at-law.

The undivided three-eighths thereof separately entered for taxation in the name of C. A. Gates for the year 1935 became delinquent for the non-payment of taxes thereon and was sold December 14, 1936, by the Sheriff of Ritchie County to J. H. Lucas, who assigned his purchase to George Morris who, in due course, applied to Olin V. Wilson, Clerk of the County Court of said county, for a deed therefor. Notice of application was given by publication directed to C. A. Gates in The Ritchie Standard, a newspaper published in Ritchie County, and no redemption having been made, the clerk executed a deed to Morris for said property dated April 15, 1938, and recorded in the office of the Clerk of the County Court of Ritchie County on the 28th day of June, 1938.

In October, 1938, Clara L. Gates, C. Bernard Gates and Mabel Gates Crickard brought this suit against Morris and Lucas and Wilson, as clerk of said county court, for the cancellation of said tax deed, alleging their relationship to C. A. Gates; their residences at the time of said tax sale, and for a long time theretofore in Kanawha County; the invalidity of said published notice and an agreement by said Morris to pay said taxes; and charging that papers on record in said clerk's office would have disclosed to him and said purchaser the identity and addresses of the plaintiffs, particularly a lease of said oil and gas to the Aetna Oil and Gas Company executed by the plaintiffs and others. No demurrer was interposed by either of the defendants; Lucas and Wilson made no defense, but Morris answered denying the agreement to pay the taxes, knowledge that the plaintiffs were heirs of C. A. Gates, that he knew their residences, and negligence on the part of said clerk in ascertaining the proper persons to be notified or otherwise, and insisting upon the sufficiency of said published notice.

Evidence was taken at the bar of the court on behalf of the plaintiffs, consisting of their own testimony and that of the clerk, called on their behalf. Morris offered no evidence. The plaintiffs testified to their relationship to C. A. Gates, and his death, and identified the record copy of said oil and gas lease. Clara L. Gates stated that she did not "receive a notice of the proposed tax sale"; C. Bernard Gates stated that he did not have "any notice of a tax sale of this property"; and Mabel Gates Crickard said that she did not receive any "notice of any nature of the proposed or contemplated sale by tax deed or otherwise." Wilson, the clerk, merely identified the record of the oil and gas lease. This lease is not in evidence.

The trial chancellor denied the plaintiffs relief and dismissed their bill. This appeal followed.

The plaintiffs totally failed to prove the alleged agreement by Morris to pay the taxes on this property. There is no testimony of his "connivance" to procure the property by fraudulent or unconscionable means. The plaintiffs, therefore, must rely for relief wholly upon the alleged insufficiency of the statutory notice of application for the tax deed.

The burden was on the tax deed grantee, Morris, to prove the validity of this published notice. "Where the statute authorizes the publication and posting of a notice, which affects property rights, the steps directed by the statute must be strictly pursued. The burden of showing such pursuance is on him who would profit by such notice." *Dickerson* v. *Flanagan*, 103 W. Va. 233, 136 S. E. 854. In this we think he has failed.

By Code, 11-10-16 (c), the clerk was required to "give notice to the person in whose name the real estate was returned delinquent and sold, or, in case of his death, to his heir, devisee and personal representative." The notice is not before us, but we think it fairly appears from the record that it was directed to C. A. Gates only—a man who had been dead for fifteen years. This was simply no notice as to these plaintiffs, who were his heirs, and the actual owners of the property. It was a total failure to give the notice required by statute, and therefore a nullity.

Counsel for appellee argue that this notice was not required to be given to parties whose interest did not appear of record, or who could not be found by due diligence. There are certain interested persons who are entitled to notice only when disclosed by the record or known to the clerk, such as grantees and lienors, but heirs are not placed in this class. And these plaintiffs were heirs, and the actual owners of the property to be redeemed. The statute also permits publication as to parties entitled to notice whose addresses are unknown to the clerk and cannot be, by due diligence, ascertained, but this provision relates only to the manner of serving the notice, and not to the determination of who shall be served.

Is this failure of notice remedied by any curative statute? Code, 11-10-26, makes said tax deed *"prima facie* evidence" against these plaintiffs that the material facts therein recited are true, and that such estate purported to be conveyed thereby vested in the grantee in the deed. The deed in question is in statutory form and recites "that the clerk of said county court caused a notice required by Section 16, Article 10, Chapter 11 of the Code to be served upon the persons entitled thereto." But this *prima facie* case is clearly overcome by the facts showing that no notice was issued against or served on these plaintiffs.

Code, 11-10-22, makes the said deed conclusive evidence against these plaintiffs "notwithstanding any irregularity in the proceedings under which the same was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the clerk of the county court." But we have here not a mere "irregularity in the proceedings," but a total omission of a mandatory step which is a prerequisite to the execution of the tax deed, and such an omission is not pretended to be cured by this provision of the statute. The same section further provides: "But no sale or deed of any such real estate under the provisions of this article shall be set aside, or in any manner affected by reason of the failure of any officer mentioned in this article to do

or perform any act or duty herein required to be done or performed by him after such sale is made, or by the illegal or defective performance, or attempt at the performance, of any such act or duty after such sale, * * *." Is it to be deduced from said statute that the highly technical and complicated problem of determining all the grantees, lienors, devisees and heirs interested in land sold for taxes is to be cast upon the clerk in the case of every tax sale? The clerk is generally not a lawyer, and the determination of these matters is often a difficult problem for even an expert abstracter of titles. No pro· vision is made for paying him for such services, although fees for issuing the notice and copies are meticulously provided for. Or, viewed from the opposite angle, is a purchaser at a tax sale compelled to rely upon the investigation and judgment of such clerk as to the persons to be notified? Or consider the present concrete case. Morris knew C. A. Gates was dead, and yet stood by and allowed the clerk to publish notice to this dead man only, and now claims the benefit of the clerk's gross error. Should he be held faultless? The statute does not distinctly so require, and we are unwilling so to hold. We believe, therefore, that the default in ascertaining and in giving information to the clerk of the interest of these plaintiffs in this land is chargeable at least partly against the tax purchaser. The clerk's fault may be healed, but not that of the purchaser. His default is not pretended to be cured by this provision of the statute. Curative statutes are particularly applicable to irregularities in action, but they are ineffectual where want of authority or jurisdiction to act is lacking. Jurisdictional defects cannot be cured. "Generally the want of notice required by statute is a jurisdictional defect which cannot be cured." 4 Cooley on Taxation (4th Ed.), sec. 1590, p. 3135. See *Ravensdale Holding Co.* v. *Village of Hastings,* 156 Misc. 777, 281 N. Y. S. 913; *Cunningham* v. *Webber,* 171 Okla. 211, 42 P. (2d) 244; *Martin* v. *Glacier County,* 102 Mont. 213, 56 P. (2d) 742; *Woodruff* v. *Dickinson,* 199 Ark. 663, 135 S. W. (2d) 667; *McCord* v. *Sullivan,* 85 Minn. 344,

88 N. W. 989, 89 Am. St. Rep. 561; *Fariss* v. *Anaconda Copper Co.* (Mont.), 31 F. Supp. 571.

Attention also is called to the fact that the statute requiring notice to these plaintiffs first came into our Code in the Acts of 1917, but that for a long time prior thereto these curative provisions of the statute had been in effect. The later statute requiring notice, therefore, should prevail over the older curative statute. *Norfolk & Western R. Co.* v. *Virginia Ry. Co.*, 110 Va. 631, 66 S. E. 863; 59 C. J. 1052. It is not to be presumed that the Legislature intended to enact a mandatory requirement of notice, and, at the same time, to allow an ancient statute to survive in effect so as to make failure to give such notice immaterial.

The appellee further insists that the plaintiffs must fail because they have not shown title in themselves to the property sold, in that they have not negatived the existence of a will by C. A. Gates. This was unnecessary. Proof of his death, with nothing more, raised a presumption that he died intestate. Consult: *Stephens* v. *Perkins,* 209 Ky. 651, 273 S. W. 545; *Jacquish* v. *Deming,* 40 S. D. 265, 167 N. W. 157; *Barham* v. *Holland,* 178 N. C. 104, 100 S. E. 186; *Chase* v. *Woodruff,* 133 Wis. 555, 113 N. W. 973, 126 Am. St. Rep. 972; *Borton* v. *Borton,* 221 Ala. 544, 130 So. 67.

It is also contended that the plaintiffs' bill was properly dismissed because the plaintiffs did not tender or offer reimbursement to said tax deed grantee for the taxes and expenses paid by him and interest thereon, and indeed there is no showing that such tender or offer was ever made in the suit or prior thereto. Ordinarily, this would have been good ground for demurrer, but inasmuch as the bill charged defendant with the duty to pay these taxes, no reimbursement was due him if this allegation had been proved and the bill would not have been bad for this omission. Not until the plaintiff failed in court to prove this agreement was a tender necessary. It could have been made at that time. Where this Court has found a plaintiff to be otherwise entitled to have a tax deed cancelled, a decree below for defendant may be re-

versed and the cause remanded to give an opportunity for making such reimbursement. *McClain* v. *Batton,* 50 W. Va. 121, 40 S. E. 509; *Toothman* v. *Courtney,* 62 W. Va. 167, 58 S. E. 915; *Lohr* v. *George,* 65 W. Va. 241, 64 S. E. 609. This is such a case.

Therefore, finding the plaintiffs are entitled to have the tax deed in question cancelled by the payment of the taxes and expenses paid by George Morris, the tax deed grantee, with interest thereon, we are of opinion to reverse the decree appealed from and remand this cause to the Circuit Court of Ritchie County, with direction to give plaintiffs an opportunity to make said reimbursement, if they so desire, and thereupon to enter a decree cancelling and setting aside said deed, but if after opportunity so to do, they elect not to make such payment, then their bill to be dismissed and all relief herein sought denied them.

*Reversed and remanded.*

RILEY, JUDGE, dissenting:

It is with regret that I find myself unable to concur with the decision which the majority of the Court has reached. However, I agree with the opinion so far as it holds that the curative provisions of Code, 11-10-26, which make a tax deed *"prima facie evidence"* that the material facts recited therein are true, does not operate to take the place of the notice required by Code, 11-10-16 (c). The difficulty I see with the decision of the Court is that the record does not justify the holding that the tax deed in question was invalid because of lack of notice to plaintiffs. It may be true, as stated in point 1 of the syllabus, that "where death is proven, without more, intestacy of the decedent will be presumed." The record here, however, does not disclose that the clerk had any record or means of knowledge available that the decedent had, in fact, died. Nor does the record disclose whether the notice by publication included the unknown heirs of decedent. In fact, this case, involving as it does the adequacy of the notice, was heard in this Court on a record which does not contain therein by stipulation or exhibit the

notice sought to be appraised; and the oil and gas lease claimed to be of record in the county court clerk's office, in which the plaintiffs are claimed to have joined, cannot be taken as having put the county clerk on notice of C. A. Gates' death, and that the lessors therein were his heirs-at-law. I say this for the very reason that this lease, if pertinent to the matters in issue, likewise was not a part of the record.

In all deference, I am fully convinced that there is such a dearth of material evidence that this Court was not justified in reaching its decision, and that the trial chancellor's decree should be affirmed. The burden of proof rested on the plaintiffs to prove their case which, in my opinion, they have not done. If this case should be appraised most favorably to plaintiffs, they would be entitled to nothing more than an order remanding the case for further development.