TROY E. HARDMAN

*v.*

C. B. WARD

(No. 10324)

Submitted October 9, 1951.  Decided November 20, 1951.

*Kump, Kump & Wooddell, W. Holt Wooddell,* for appellant.

*Arnold, Crawford & Hyer* and *Donald K. Crawford,* for appellee.

RILEY, JUDGE:

Troy E. Hardman brought this suit in equity in the Circuit Court of Randolph County against C. B. Ward, for the purpose of having a certain tax deed, executed on July 24, 1941, from John S. Caplinger, Clerk of the County Court of Randolph County to said Ward annulled and set aside as a cloud upon plaintiff's title and right of ownership in certain real estate, including surface and minerals, described in plaintiff's bill of complaint. The cause was heard upon plaintiff's bill of complaint; a special plea to the effect that the suit, having been brought more

than three years after the delivery of the deed to Ward, was barred under Sections 31 and 32, Article 3, Chapter 117, Acts of the Legislature, 1941; a demurrer to and motion to strike the special plea; and certain testimony adduced at the bar of the court. The defendant, having been given thirty days within which to file an answer, and not desiring to do so, elected to stand on the sufficiency and applicability of the special plea.

By the final decree, entered on April 15, 1950, the circuit court found that the special plea was neither applicable nor sustained by the evidence, and decreed that the deed of July 24, 1941, from the county court clerk to Ward be set aside as a cloud on plaintiff's title. From this decree the defendant Ward prosecutes this appeal.

Prior to January 25, 1929, Hardman owned the property described in the deed of July 24, 1941, which he now seeks to have set aside. On the 25th day of January, 1929, Hardman, his wife joining, sold the property, consisting of land and mineral rights, to A. B. Casto, retaining a vendor's lien to secure four several purchase money notes, each in the amount of one thousand dollars. These notes were later put up at the Elkins National Bank, as collateral to secure a note in the amount of five thousand dollars. Shortly thereafter Hardman was forced into involuntary bankruptcy, being adjudged a bankrupt on September 4, 1930. At the instance of the bank an order was entered by the referee directing the trustee to disclaim title to the four vendor's lien notes, under which order the bank obtained title and possession thereof.

In addition to the above, the bill of complaint further alleges that the property having become delinquent for taxes for the year 1931, was sold to the State in 1932 at a tax sale by the Sheriff of Randolph County; that on June 15, 1937, A. B. Casto conveyed the property to one Nellie Elwood, retaining a life estate therein; that notwithstanding the property was then in the name of the State by virtue of the sale to the State in 1932, the property was wrongfully and improperly entered upon the land books

of Randolph County for the year 1938 in the name of the remainderman, Nellie Elwood, the name of the life tenant Casto not being entered for taxation purposes for that year.

The bill of complaint also alleges that on December 11, 1939, the property was wrongfully and improperly sold by the Sheriff of Randolph County to the defendant, C. B. Ward, for $38.63; that a notice prepared by Ward was directed only to Nellie Elwood, which was to the effect that Ward would demand a deed from the Clerk of the County Court of Randolph County, was served on her on April 24, 1941; that Casto had no notice, formal or otherwise, of the tax sale to Ward, or of the notice to Nellie Elwood that a deed would be demanded; that pursuant to Ward's demand for a deed and notice to Nellie Elwood, the County Clerk of Randolph County, on July 24, 1941, executed and delivered to Ward the deed sought to be cancelled and removed as a cloud on plaintiff's title; that on May 11, 1942, Nellie Elwood by deed reconveyed to Casto the remainder, after Casto's life estate, which the latter had conveyed to her by the deed of June 15, 1937; and that thereby Casto was reinvested with his former rights in the property. This deed was admitted to record in the office of the Clerk of the County Court of Randolph County on August 20, 1946.

The bill of complaint further alleges that Casto died intestate, without having paid any part of the indebtedness due on the vendor's lien notes, and by deed dated March 1, 1949, Casto's wife, Albina Casto, and his heirs at law, together with the latter's respective husbands and wives, in consideration of the sum of four thousand dollars to be paid by the grantee in four annual installments of one thousand dollars each, with interest at the rate of four per cent per annum, evidenced by four promissory notes, conveyed the property to the plaintiff, Troy E. Hardman; and later, on January 8, 1949, the Elkins National Bank then being in process of liquidation, the trustees representing the stockholders thereof sold all four vendor's lien notes retained in the Hardman deed of

January 25, 1929, to the plaintiff Hardman for $6,025.00, by written assignment, dated January 15, 1949, which was acknowledged and later recorded.

In addition to the foregoing allegations the bill alleges that Elkins National Bank paid taxes on the property embraced in the Hardman deed of January 25, 1929, "to about the year 1930"; and "that thereafter the land was assessed in the name of A. B. Casto to the year 1938, except for 422 acres of oil and gas for the years 1934 and 1935, which was assessed jointly to A. B. Casto and W. L. Rohrbaugh;" (italics supplied) that an undivided one-half interest in said four hundred twenty-two acres of oil and gas was assessed in Casto's name for the years 1931, 1932, 1933, 1936 and 1937; that the State of West Virginia, having purchased the property embraced in the Hardman deed, except the undivided one-half interest in the four hundred twenty-two acres of oil and gas, the State "became vested with the title to all of the property mentioned and described in Plaintiff's Exhibit 'A', and was continuously vested with said title *through the year 1938,"* (italics supplied) and that thereafter the property was sold to the State and was carried on the land books in the office of the Clerk of the County Court of Randolph County with the notation, "Not to be sold."

The bill of complaint further alleges, upon information and belief, that the defendant Ward, "by reason of said tax sale to him, as hereinbefore set forth, has paid certain taxes as due and owing upon said lands and has redeemed said lands from the Auditor of the State of West Virginia by reason of the delinquencies as hereinabove set forth", but as to the exact amount of taxes, interest and penalties paid by Ward, plaintiff alleges he is not advised, and further that upon determination of the amount of taxes, interest and penalties paid by Ward, he stands ready, able and willing to pay the same; and that if there are any other charges or expenses which plaintiff should pay by reason of Ward's payment of taxes, charges, interest and penalties, he is ready and able to pay them.

To the bill of complaint defendant Ward filed a special plea, asserting that plaintiff is barred under Acts of the Legislature, Regular Session, 1941, Chapter 117, Article 3, Sections 31 and 32 (Michie's Code, 11A-3-31, 32), from obtaining the relief prayed for in his bill of complaint, because the suit was brought more than three years after the county court clerk's deed to the defendant Ward of the property involved herein, dated July 24, 1941.

Plaintiff demurred to defendant's special plea, and moved to strike the same before the taking of testimony on the plea. The court by decree of November 9, 1949, withheld its decision upon plaintiff's demurrer and motion to strike, and directed that the cause proceed to a hearing on the merits of the case before a decision upon the pleadings be made. On the day set for the taking of testimony upon the special plea, defendant interposed a motion that the former decree of November 9, 1949, be rescinded, and that the court then rule upon the sufficiency of the special plea before the taking of testimony, which motion the court overruled. Likewise the court then overruled defendant's objection to the taking of testimony until a decision upon the pleadings had been made and determined by the court. At the hearing plaintiff testified concerning the matters alleged in his bill of complaint, and also concerning Ward's offer to compromise the controversy by the payment of five hundred dollars cash. The plaintiff offered the testimony of Wayland K. Casto, one of the Casto heirs, who was then living on a part of the property in controversy, who testified concerning the occupancy of the property by the Castos. John S. Caplinger, Clerk of the County Court of Randolph County, called by the plaintiff, testified concerning the deed which he made to the defendant Ward on July 24, 1941, and the notice served upon Nellie Elwood; and that no other person, so far as the witness knew, was notified before the execution and delivery of the deed.

By a stipulation of counsel, to which counsel for defendant objected on the sole ground that it was irrelevant and immaterial to issues as raised by the special plea, it

was agreed that the property was sold to the State in 1932 for 1931 taxes, and thereafter was carried on the land books of Randolph County "through the year 1938, the title therein shown to be in the State of West Virginia, with the notation on said records as 'Not to be sold.'"

By decree of April 8, 1950, reciting that the amount of taxes, interest and penalties paid by Ward, which should be reimbursed by the plaintiff had not been ascertained, the court decreed that Ward file with the clerk of the circuit court on or before April 13, 1950, a statement of all taxes, interest and penalties paid by him, accompanied by receipts therefor.

In the final decree of April 15, 1950, the court, first, cancelled and set aside, as a cloud on plaintiff's title, the deed of John S. Caplinger to the defendant Ward, dated July 24, 1941, upon reimbursement to Ward or payment into court by plaintiff of the amount of taxes, charges and penalties by the defendant Ward, with interest thereon at twelve per cent per annum from the date of each payment; and, second, the defendant Ward, having admitted in open court as shown by the decree, that the amount of taxes, interest, charges and penalties paid by him did not at the time the decree was entered amount to more than six hundred dollars, the decree recites that plaintiff paid to the clerk of the circuit court by certified check the sum of six hundred dollars to be applied to the payment of all taxes, interest, charges and penalties paid by defendant.

Plaintiff's bill of complaint evidently is based upon three theories: (1) That Casto, being the owner of the land at the time it was purchased by the State, was the former owner at the time of the sale to defendant Ward, and, as such, was entitled to notice under Section 24, Article 3, Chapter 117, Acts of the Legislature, 1941; (2) that at the time the property was sold to Ward the title stood in the name of the State, and, therefore, the Sheriff of Randolph County had no title to sell, and the clerk of the county court had no title to convey; and (3) that the

property being in the name of the State in 1938, the assessment of that year, under which the property was returned delinquent, resulting in the purported sale to Ward, was void. Plaintiff in this suit seeks to have defendant's deed from the Clerk of the County Court of Randolph County cancelled and annulled, as being a cloud on his title. In this respect the instant suit does not differ in any way from a suit in equity brought by the owner of property or any one having an interest therein to clear cloud on title. This is inherently the function of a court of equity.

But it is contended by the defendant that this suit, having been brought more than three years after the delivery of the deed to the defendant Ward from John S. Caplinger, clerk of the county court, bearing date July 24, 1941, is barred under Sections 31 and 32, Article 3, Chapter 117, Acts of the Legislature, 1941. With this position we do not agree. Only a casual reading of plaintiff's bill of complaint in connection with said Sections 31 and 32 leads us to that conclusion. Section 32 deals with the right of any person entitled to be notified under Section 24 of Article 3, who has not been served with notice as therein required, or does not have actual notice that such notice has been given to others, to bring a suit in equity to set aside a tax deed, which suit, under the provisions of Section 32, must be instituted on or before December thirty-first of the third year following the sale. Section 31 of Article 3, dealing with the right to set aside a tax deed improperly obtained, has a like requirement of three years within which suit must be brought. This section of the Act, however, applies only "Whenever the clerk of a county court has delivered a deed to a purchaser after the time specified in section twenty-five" of Article 3, or within that time has delivered a deed to a purchaser who was not entitled thereto, either (1) because of the purchaser's failure to meet the requirements of Section 20 of said Act, which are: (a) that the purchaser secure and file with the clerk of the county court the survey or report provided for in Sections 21 and 22 of Article 3; (b) exam-

ine the title to the property in order to prepare a list of those to be served with notice to redeem and request the clerk to prepare and serve the notices, as provided by Sections 23 and 24 of Article 3; or (c) deposit, or offer to deposit, with the clerk a sum sufficient to cover the cost of preparing and serving the notices; or (2) because the property conveyed has been redeemed. These two sections by expressing specifically the grounds upon which a suit in equity may be brought to set aside a tax deed given by a county clerk to a tax purchaser, pursuant to a tax sale, and making no reference to a deed allegedly void because of erroneous assessment, are not applicable to a deed and a suit brought for the purpose of having the deed set aside on the ground that the assessment under which the tax sale was had was allegedly erroneous.

In this jurisdiction a tax sale, based upon an invalid assessment, is void, and a deed made by a county clerk to a tax purchaser, pursuant to such sale, constitutes a cloud upon the owner's title, which the latter has a right to have removed in a court of equity. *Cunningham* v. *Brown,* 39 W. Va. 588, 20 S. E. 615; *Boggess* v. *Scott,* 48 W. Va. 316, pt. 1 syl., 37 S. E. 661; *Caplan* v. *Shaw,* 126 W. Va. 676, 686, 30 S. E. 2d 132.

Without question the instant assessment was void, and, under the ruling of this Court in the case of *Cunningham* v. *Brown, supra,* and other cases to like effect hereinabove cited, a suit by a proper interested party will lie to set aside a void deed. The three-year limitation provisions in Sections 31 and 32, Article 3, Chapter 117, Acts of the Legislature, 1941, in our opinion, are not applicable to the instant suit, so far as it is based upon an invalid assessment and tax sale thereunder: it follows that this suit was timely brought.

Further we are of opinion that the plaintiff Hardman had a right to bring and maintain this suit. We say this, though it does not appear from this bill of complaint that Ward had redeemed the property from the auditor prior to the suit. In any event the tax sale and the deed made

thereunder being void, plaintiff was either the owner of the property under Ward's redemption thereof, or, if the redemption did not occur prior to the bringing of this suit, he was the former owner. One having the right to redeem or having title to the property sold at a tax sale may attack the tax title. *Townshend* v. *Shaffer,* 30 W. Va. 176, 3 S. E. 586; *Hawkinberry* v. *Snodgrass,* 39 W. Va. 332, 19 S. E. 417; *Collins* v. *Reger,* 62 W. Va. 195, 57 S. E. 743; *Despard* v. *Pearcy,* 65 W. Va. 140, 63 S. E. 871; *State* v. *Mathews,* 68 W. Va. 69, 69 S. E. 644; and *Caplan* v. *Shaw, supra.*

The plaintiff has properly offered in paragraph XI of his bill of complaint to reimburse the defendant for the money paid by him for taxes and in the redemption of the land from the state auditor "by reason of the delinquencies as hereinbefore set forth", which offer was amply protected, as appears from the final decree of the Circuit Court of Randolph County of April 15, 1950, by the payment into court by Hardman of six hundred dollars. Hardman and Ward do not stand in privity with each other, as was the case with the parties in the case of *Sturm* v. *Fleming,* 26 W. Va. 54, and like cases involving judicial sales; but Ward holds his tax title adversely to Hardman as assignee of the former owner, or, in the event the property had been redeemed from the auditor prior thereto, as the grantee under the Casto deed. And if the taxes paid by the tax purchaser had been paid in his own name, the payment would not have inured to Hardman's benefit, and the latter would not be required to reimburse Ward for the taxes paid in the decree declaring his deed void and setting it aside. *Simpson* v. *Edmiston,* 23 W. Va. 675, 684, pts. 7 and 8 syl. From this bill of complaint it appears that Ward, after he had obtained his deed, did not cause the property to be assessed on the land books in his name, and pay the taxes on his hostile title in the protection thereof from forfeiture, under Article XIII of the Constitution of this State, but, as indicated by the words in the bill of complaint, Ward made such payments "by reason of the de-

linquencies as * * * set forth" in the bill of complaint. Such delinquencies are charged in the bill of complaint as having accrued while the property was in the name of Casto, whose interest by the conveyance from his widow and heirs, and their respective husbands and wives, became vested in the plaintiff Hardman. Hardman being in a court of equity, and seeking to invoke the processes of that court for the purpose of having Ward's deed cancelled and annulled must himself do equity, which this record shows he has done by the offer contained in his bill of complaint, and the payment of money into court.

As Sections 31 and 32, Article 3, Chapter 117, Acts of the Legislature, 1941, do not apply as a bar to the instant suit, the trial court properly sustained the demurrer to defendant's special plea. This holding renders moot defendant's assignment of error that the trial court did not pass on the sufficiency of the plea before the evidence was adduced in support of plaintiff's bill of complaint. In any event, in our opinion, defendant was not prejudiced by the court's action in that regard.

For the foregoing reasons the decree of the Circuit Court of Randolph County is affirmed.

*Affirmed.*