GEORGE F. SHAFFER, *et al.*

*v.*

MAREVE OIL CORPORATION, *a corporation, and*

EVMAR OIL CORPORATION, *a corporation*

*v.*

ELLA J. MARLOWE, *Executrix, etc., et al.*

(No. 13325)

Decided April 2, 1974.      Rehearing Denied May 3, 1974.

*H. D. Rollins and J. Edward Litz* for appellants.

*Robert J. Louderback,* for appellee Marlowe.

*Stone, Bowles, Kauffelt & McDavid, P. Michael Pleska and F. T. Graff, Jr.,* for appellee Mareve Oil.

SPROUSE, JUSTICE:

This case is before the Court upon an appeal from a judgment of the Circuit Court of Kanawha County in an action instituted by the heirs at law (including the successors of one heir) of A. J. and Eliza Shaffer for an accounting of oil sold and produced from wells on a certain tract of land in Kanawha County. The action was instituted against Mareve Oil Company and Evmar Oil Corporation, as defendants. The defendant oil companies by a third party complaint, sought indemnification from Ella J. Marlowe, devisee and executrix of the estate of B. F. Marlowe. The circuit court entered judgment in favor of the defendants and dismissed the third party complaint. From that action, the plaintiffs seek an appeal.

The questions presented for decision involve a determination of the validity of a tax deed to the mineral interest in the 29 acre tract of real estate issued to B. F. Marlowe, and the effect of a subsequent redemption from the State Auditor of the same interest by the plaintiffs as former owners.

A. J. Shaffer died intestate in 1916 leaving six children and his wife, Eliza Jane, surviving. The widow, Eliza Jane Shaffer, married one J. B. Nichols in 1939 or 1940. She died on August 18, 1942. After the death of Eliza Jane Shaffer Nichols, the mineral ownership of the 29 acres was in the Shaffer heirs.

The Shaffers paid taxes on the property until 1944 when the property was returned delinquent and sold by the sheriff on December 10, 1945 to B. F. Marlowe. On June 2, 1947, Marlowe, who is now deceased, procured a tax deed from the Clerk of the County Court of Kanawha County which purports to convey to him the mineral interest in the 29 acre tract of real estate.

Chapter 11A, Article 3, Section 20, Code, 1931, as amended, requires a purchaser at a tax sale, among other things, to search the title records to ascertain the owners of the delinquent property and furnish their names to the county clerk. Sections 23 and 24 of that article, among other things, require the clerk to have notice served on the owners of the real estate or their heirs.

There is no dispute as to the essential facts. Marlowe, in attempting to comply with the provisions of Section 20, examined the title of the involved real estate interest and certified to the county clerk that the owners were Eliza Shaffer and J. B. Nichols. At the time of the tax sale, Eliza Shaffer had been dead for over three years and her heirs were the owners of the real estate interest. Notice was served by publication upon the deceased, Eliza Shaffer, and no notice, constructive or otherwise, was served upon the heirs or others.

Marlowe has paid the taxes on the property since 1945. It is stipulated that no one has been in physical possession of the minerals until the defendant oil companies drilled producing oil wells in 1968 under the authority of leases from the plaintiffs and also from B. F. Marlowe.

On December 8, 1971, the Shaffer heirs, claiming that the mineral interest of the 29 acres had forfeited to the State for non-entry during the period of 1944 to 1971 inclusive, redeemed the land from the State Auditor by paying the accumulated taxes, interest and certification fee.

The defendant oil companies successfully drilled an oil well on the involved properties under leases from the Shaffer heirs and from Marlowe. The basic dispute is to whom the oil royalties are to be paid—to the Shaffers or to Marlowe's estate.

The plaintiffs attack the validity of the defendant's tax deed, alleging it is void because of Marlowe's admitted failure to comply with the requirements of Code, 1931, 11A-3-20, as amended.

The defendant admits that by B. F. Marlowe's furnishing the inadequate list of owners to the clerk, the tax deed was originally defective. She contends, however, that the plaintiffs are prohibited from bringing this action attacking the tax deed by several provisions of Code, 1931, 11A-3, as amended, including Sections 31 and 32. The latter two sections contain a special statute of limitations barring an attack upon a tax deed after the expiration of a three-year period following the tax sale. This action was commenced approximately 26 years after the tax sale.

Section 31 provided in pertinent part:

"Whenever the clerk * * * has delivered a deed the the purchaser * * * who was not entitled thereto either because of his failure to meet the requirements of section twenty of this article * * * his heirs and assigns, or the person who redeemed the property, may, on or before December thirty-first of the third year following the sale, institute a suit in equity to set aside the deed. * * *"

Section 32 contained a similar provision:

"If any person entitled to be notified * * * is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, on or before December thirty-first of the third year following the sale, institute a suit in equity to set aside the deed. * * *"

The plaintiffs counter by admitting that they would be barred from attacking the Marlowe tax deed by the three year statute of limitations if the defects were procedural in nature, but contend that the defects are jurisdictional and that a statute of limitation cannot bar an action to set aside a tax deed where it is originally void because of a jurisdictional defect. The plaintiff cites two cases to support this contention: *Gates v. Morris,* 123 W.Va. 6, 13 S.E.2d 473 (1941) and *Stiles v. Layman,* 127 W.Va. 507 33 S.E.2d 601 (1945). Both cases involve tax sales which

occurred prior to March 6, 1941—the date when applicable statutes were extensively revised by the legislature.

*Gates v. Morris, supra,* involved a case similar to the one we are considering. The land was listed in the name of the deceased and prior to issuing title, the clerk served notice by publication directed only to the deceased and not to the heirs. The statute in effect at that time, Code, 11-10-22, provided that the title would be valid "notwithstanding any irregularity in the proceedings under which the same was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the Clerk of the county court." This section also provided: "But no sale or deed of any such real estate under the provisions of this article shall be set aside or in any manner affected by reason of the failure of any officer mentioned in this article to do or perform any act or duty herein required to be done or performed by him after such sale is made, or by the illegal or defective performance, or attempt at the performance, of any such act or duty after such sale, * * *." The Court held, however, that since lack of notice was a "total omission" and not a "mere irregularity," this was a jurisdictional defect not validated by the curative provisions of that section. *Stiles v. Layman, supra,* contained a similar holding but its final disposition turned on other grounds.

The defendant agrees that if the present case were controlled by *Gates* and *Stiles,* the plaintiffs' action would not be barred and her tax deed could be successfully attacked in this proceeding. The defendant argues, however, and the trial court agreed, that the effect of *Gates* and *Stiles* as it pertains to the issue involved here was vitiated by the act of the legislature in revising all of the procedures relating to the sale of delinquent property.

Prior to 1941, statutory provisions relating to delinquent taxes and the sale of property due to delinquency were contained primarily in Chapter 11. The legislature completely rewrote most of the applicable statutory provisions and included them in a new Chapter 11A. The present

provisions governing the issues presented by this controversy are contained in Chapter 11A, Article 3.

The pre-1941 Chapter 11 contained a conclusive presumption and general curative language giving certain validity to tax deeds. After the 1941 revision, these statutes were considerably reworded and the presumption and curative language was included in 11A-3-28 and 11A-3-29. Pertinent language of Section 28 provides in part: "The tax deed shall be conclusive evidence of the acquisition of such title." Section 29 provides: "No irregularity, error or mistake in repect to any step in the procedure leading up to and including delivery of the tax deed shall invalidate the title acquired by the purchaser unless such irregularity, * * * is, by the provisions of sections sixteen, thirty, thirty-one, or thirty-two of this article, expressly made ground for instituting a suit to set aside the sale or the deed." The "short statute of limitation" provisions of Sections 31 and 32 of that article have been previously referred to in this opinion.

Statutory provisions for the sale of delinquent lands, as an adjunct to the enforcement of tax laws, and the tax deeds obtained thereby have been a part of the administrative procedure and jurisprudence of this country throughout the history of our government. Since these statutes are in derogation of the common law, and because the policy of courts in our early history was to protect landowners, the procedures for acquiring tax deeds were meticulously scrutinized and narrowly construed against the tax purchaser and in favor of the original landowner. 51 AM. JUR., *Taxation,* Section 1090, page 948. Note, 62 Harv. L. Rev. 93; Baker, Legal Aspects of Tax Delinquency, 28 Ill. L. Rev. 159; Young, Tax Deed, 34 Rocky Mt. L. Rev. 181.

There were early attempts by most state legislatures to give some certainty to tax deeds in furtherance of the public policy concerning the stability of land titles in general. In the late 1920's and 1930's this effort was given major impetus by the economic condition of the country.

More comprehensive laws concerning tax sales were enacted to bolster declining public treasuries. There were concomitant public policies to produce certainty in land titles and to vest title to real estate in responsible individuals who would bear their share of the tax burden.

To accomplish these purposes, the various state legislatures generally enacted one or more of three types of statutes: The presumptive statute which makes the deed either a prima facie or conclusive presumption that the various requirements of the statute have been met; the curative statute which generally provides that the tax deed is valid notwithstanding irregularities of various kinds; and lastly, the short statute of limitations which bars the right to bring an action to set aside the deed on specified grounds after a stated period of time. Note, 62 Harv. L. Rev. 93; Young, Tax Deed, 34 Rocky Mt. L. Rev. 181.

It is the universal rule that presumption and curative provisions relate only to voidable deeds and not to deeds which are void because of jurisdictional defects. *Gates v. Morris, supra.* In fact, it would probably be in all instances a violation of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States to attempt to cure jurisdictional defects by conclusive presumptions and other curative language. *Marx v. Hanthorn,* 148 U.S. 172; 51 AM. JUR., *Taxation,* Section 1095, page 952.

There can be no doubt that Marlowe's providing to the clerk only the name of the deceased and not the names of the heirs as required by Section 20 was a jurisdictional defect. *Gates v. Morris, supra.* If the curative provisions of the statute, even as altered by the 1941 legislative act, were all that was involved, it is clear that the *Gates* rule would apply and that plaintiffs would not be barred from bringing this action. The "short statute of limitations", however, was not present in the previous law so as to have been considered in *Gates* and *Stiles.*

A short statute of limitations may validly bar an attack on a jurisdictionally defective or void tax deed. A statutory

provision prohibiting action to set aside such deeds after a reasonable period of time is constitutional and not violative of the Due Process Clause of the Fourteenth Amendment. *Saranac Land and Timber Company v. Comptroller of New York,* 177 U.S. 318; *Turner v. New York,* 168 U.S. 90; *Davault v. Essig,* 80 Cal. App. 2d 970, 183 P.2d 39, *cert. denied,* 333 U.S. 843.

Notwithstanding the constitutionality of such statutory provisions, the majority of jurisdictions faced with interpreting similar provisions in their statutes have ruled that time limitations for bringing suits to set aside tax deeds apply only to non-jurisdictional defects. 51 AM. JUR., *Taxation,* Section 1155, page 995; Annot., 38 A.L.R. 2d 986, 1070, et seq. Many of these decisions are based on the peculiar wording of the state statutes and depend on the intent of the particular legislatures. See state statutes cited in Young, Tax Deed, 34 Rocky Mt. L. Rev. 181, footnotes 56 and 57. The issue then turns on whether the West Virginia Legislature intended to bar attempts to bring an action after three years on titles which would have otherwise been void because of jurisdictional defects.

Strong and clearly reasoned opinions from a minority of American jurisdictions hold that the short statute of limitations applies to all defects, including jurisdictional defects. The rationale of these decisions is based on a distinction between curative statutes and statutes of limitations. In this repect, it has been held that, while curative statutes should not apply to jurisdictional defects because they automatically deprive a former owner of all his rights, a statute of limitations creates a reasonable time for the defaulting landowner to protect his interest. *Davault v. Essig,* 80 Cal. App. 2d 970, 183 P.2d 39; *Nelson v. Hein,* 183 Kan. 430, 327 P.2d 1028; *Shell Oil Co., Inc. v. Board of County Commissioners,* 171 Kan. 159, 231 P.2d 220; *George F. Weaver Sons Company v. Burgess,* 196 N.Y.S.2d 641, 164 N.E.2d 677; *Weaver v. City of Utica,* 2 App. Div. 2d 456, 156 N.Y.S.2d 569; *City of New Rochelle v. Echo Bay Waterfront Corporation,* 268 App. Div. 182,

49 N.Y.S.2d 673; *Meigs v. Roberts,* 162 N.Y. 371, 56 N.E. 838; *Hood River County v. Dabney,* 246 Ore. 14, 423 P.2d 954.

Where the policy bolstering a judicial rule is clear, the number of courts adhering to a particular position loses significance. This is particularly true where a state legislature demonstrates intent by the content of its legislation and by an expression of legislative policy. The West Virginia Legislature in 1941 set out its policy in Code, 1931, 11A-3-1, as amended:

> "In view of the paramount necessity of providing regular tax income for the State, county and municipal governments, particularly for school purposes; and in view of the fact that tax delinquency, aside from being a burden on the taxpayers of the State, seriously impairs the rendering of these essential services; and in view of the further fact that delinquent land, with its attendant problems made acute by the events of the past decade, not only constitutes a public liability, but also represents a failure on the part of delinquent private owners to bear a fair share of the costs of government; now, therefore, the legislature declares that its purpose in the enactment of this and the following article is threefold: First, to provide for the speedy and expeditious enforcement of the tax claims of the State and its subdivisions; second, to provide for the transfer of delinquent lands to those more responsive to, or better able to bear, the duties of citizenship than were the former owners; and third, in furtherance of the policy favoring the security of land titles, to establish an efficient procedure that will quickly and finally dispose of all claims of the delinquent former owner and secure to the new owner the full benefit of his purchase."

It is true, as is often the case of drastic revisions, that the legislature included some confusing language in its revision. Code, 1931, 11A-3-20, as amended, after imposing certain requirements on the tax purchaser states: "* * * For failure to meet these requirements, the purchaser shall lose all the benefits of his purchase." On the other

hand, the 1941 legislation enacted not only one device but all three of the devices commonly used throughout the country to validate tax deeds: The presumptions, the curative statutes, and the short statute of limitations. The conclusive presumption and curative provisions in Sections 28 and 29 validate the tax deed against all defects except ones jurisdictional in nature without regard to running of time except for the time fixed for redemption. In addition to this, the legislature enacted the three year statute of limitations not contained in the previous act. If this were to be construed to cure after a lapse of time no more than the other provisions had already validated, it would have no meaning whatsoever. A rational interpretation of the legislative intent was that it intended the statute of limitations to bar actions to set aside the deed for all defects defined therein including jurisdictional defects. To be consistent, the language in Section 20 relating to the loss of all benefits by the tax purchaser must then be construed to relate to those benefits which the tax purchaser would have lost by that provision except for being saved by the running of the three year statute of limitations.

It is also the general rule that even where the short statute of limitations is applicable the tax purchaser must have possession of the land before the statute of limitations begins to run. 72 AM. JUR. 2d, *State and Local Taxation,* Section 1057, page 325. Careful analysis compels the conclusion that possession of the involved real estate interest on the part of the tax purchaser is not necessary to start the running of the short statute of limitations. A good many courts have ruled that such possession was necessary, but in those decisions such requirement was held to be either explicitly or implicitly contained in the statute. In some instances, courts have construed them to be in the nature of an adverse possession statute. A few courts have considered this, we believe, more rationally and have decided that possession is not necessary to start the statute running. *Sears v. County of Calaveras,* 45 Cal. 2d 518, 289 P.2d 425; *George F. Weaver Sons Company v. Burgess,*

*supra; Dunkum v. Maceck Building Corp.,* 256 N.Y. 275, 176 N.E. 392.

The short statute of limitations contained in 11A-3-31 and 11A-3-32 are not adverse possession statutes, but relate solely to the time a civil action may be instituted. They are in addition to the adverse possession provisions contained in Article 2, Chapter 55 of Code, 1931, as amended. See *Turner v. New York, supra* at 94, wherein the Court stated: "* * * But the statute did not take away any right of action which he had before its passage, but merely limited the time within which he might assert such a right. Within the six months he had every remedy which he would have had before the passage of the statute. * * *"

It has been argued that possession by the tax purchaser is necessary to give notice to the previous owner of the running of the statute of limitations. We think this is amply answered by the court in *Hood River County v. Dabney, supra* at 27-29, 423 P.2d at 961:

> "It must be borne in mind that we are not here dealing with a statute of limitations which cuts off the rights of the owner without warning. The statutes give warning to the owner that if he does not pay his taxes he may lose his land. As the dissent in Welborn v. Whitney, 190 Okl. 630, 642-643, 126 P.2d 263, 275 (1942) explains, every citizen 'is presumed to have known that his land was taxable, that in due course it would be assessed, a tax levy extended against it, and it would be placed on the tax rolls, that it was his duty to timely pay his taxes, that if he failed to do so his land would be offered for sale and resale at a time and placed specified in the statutes, and that if the county had to purchase it for want of bidders it would be offered for sale at a County Commissioner's sale and some one would buy it.'

> \* \* \*

> "The imposition of the duty upon the defendant owner to learn what was being done to enforce the payment of taxes against his property and the limitation upon his right to attack the foreclosure

decree * * * is a legitimate exercise of legislative power in carrying out a property tax program."

See also *Turner v. New York,* 168 U.S. 90. In *Mullane v. Central Hanover Bank & Tr. Co.,* 339 U.S. 306, the court held that sufficiency of notice under the Fourteenth Amendment depends on the type of transaction and property interest involved with a weighing of the public interest in resolving the litigation in which the notice is involved.

The court in *Spitcaufsky v. Hatten,* 353 Mo. 94, 111, 182 S.W.2d 86, 96, stated:

"Due process is a very different thing in the assessment and collection of public taxes from the same right as applied to litigation between parties over private rights, the institution of the latter depending wholly on the will of the complainant. The reasons are apparent. The first is the government's exigent need for the pecuniary support necessary to its existence. The second is the futility of impeding the annual collection of taxes by requiring a predetermination of the titles to many parcels of land * * * and the identity and competency of their owners. The third is that taxes are collected periodically under fixed laws which, in a restricted sense, impart their own notice."

In the instant case, the public policy is to require every taxpayer to bear his share of the taxes and to obtain certainty in land titles so that the land may be productively used.

The petitioner raises the point that to hold an attack on a jurisdictional defect to be barred by the statute of limitations would be in conflict with Article XIII, Sections 3 and 6 of the Constitution of West Virginia relating to the forfeiture and subsequent sale of land for non-entry for a period of five years. We do not agree that there is a conflict. There is a non-entry under Section 13 where land is not entered for a period of five years by one having a responsibility to have the land entered on the land books. The legislature can expand that responsibility beyond the

original owner. There are, of course, still instances where title could forfeit under the provisions of Article XIII.

We are aware, of course, of our holdings in *Thaxton v. Beard,* 157 W. Va. 381, 201 S.E.2d 298; *Bailey v. Baker,* 137 W.Va. 85, 68 S.E.2d 74, 70 S.E.2d 645; *Hardman v. Ward,* 136 W.Va. 370, 67 S.E.2d 537, relating to a void sale because of an erroneous assessment and by this decision do not intend to disturb these holdings. The short statutes of limitations contained in Sections 32 and 33 do not by their terms apply to the defects involved in those cases.

The decision is, therefore, affirmed.

*Affirmed.*